INGA KAEMPFE, Respondent, *v.* LEHN & FINK PRODUCTS CORP., Appellant, et al., Defendant.

First Department, May 21, 1964.

*Lillian E. Cuff* of counsel (*George J. Conway,* attorney), for appellant.

*Herman B. Glaser* for respondent.

EAGER, J. The plaintiff, in a suit against the manufacturer of the spray deodorant "Etiquet", has recovered judgment for a severe case of dermatitis resulting from an allergic reaction in the use of the product. The action was tried and submitted to the jury on the theory that the defendant manufacturer was negligent in its alleged failure to give adequate warning to the very few persons who might possibly suffer some allergic reaction in the use of the product.

The plaintiff, a 19-year-old woman, had purchased at a local drugstore two containers of the product labeled "Etiquet Spray-On Deodorant", which was prepared, sold and used for the purpose of preventing body perspiration and odor. The label on the container read as follows: "Easy to use A quick squeeze — it sprays Stops underarm odor Checks perspiration Safe for normal skin Harmless to clothes." The container also was marked with the statement, "Contains Aluminum Sulphate".

Aluminum sulphate, the essential ingredient in the preparation, when applied to the skin, has the effect of closing the pores, stopping perspiration and eliminating odor. According to the testimony, practically all of the deodorants on the market contain aluminum sulphate.

After her purchase of the product, the plaintiff, following the directions thereon, applied the spray in the area of both armpits. Thereafter, during that day, she detected an itching sensation and observed an inflammation where the spray had been applied. Subsequently, a rash or dermatitis developed which spread to adjacent parts of her body. It was accompanied by burning, blistering and itching. Although permanent injury was not claimed, the sequelae persisted for sometime until it was fully healed. This was plaintiff's first allergic reaction to this or any other product.

The plaintiff's medical expert testified that the aluminum sulphate in the product was the cause of plaintiff's dermatitis. By his testimony, it was established that a few persons may be sensitive to products containing this particular ingredient. The doctor stated, however, that the chemical agent aluminum sulphate, which is used in almost all deodorants, is not normally harmful to skin; that it is in fact safe for "normal skin" as claimed.

This is the typical case where a peculiar reaction to a product in common use was due solely to an allergy possessed by the user. Plaintiff's medical expert testified that her rash was due to an allergy, and, in this connection, he described an allergy as "the reaction of the skin to a substance which, as a rule, does not bother normal people but which in people who are susceptible, sensitized, makes them react differently from normal people." The plaintiff is apparently one in a multitude of persons who has an allergy to the ingredient aluminum sulphate. Here, as measured by defendant's sales figures for this product for the year 1956 (the year in which plaintiff used this preparation) and the number of complaints it received therefrom, it appears that some sensitivity was experienced in the ratio of about 1 to 150,000 customers.

There is no claim or proof that the defendant was negligent in the concoction of the contents of the particular containers purchased and used by plaintiff. Furthermore, it appears that the product is one universally used without deleterious effect and, therefore, the defendant may not be cast in liability on the theory that it was negligent in manufacturing for sale and selling an inherently dangerous or poisonous product. (See *Karr* v. *Inecto, Inc.*, 247 N. Y. 360; *Sanders* v. *Clairol, Inc.*, 2 A D 2d 857.) "It is a matter of common knowledge that many persons are allergic to conditions which do not affect the normal individual. Cases so holding are legion with reference to wearing apparel, cathartics, face powders and sedatives. In this State it has been held that 'A preparation is not deleterious to human health in the ordinary acceptation of that term simply because one person in a multitude of those using it happens to meet with ill effects from taking it.' (*Willson* v. *Faxon, Williams & Faxon*, 138 App. Div. 359, 364.) ". (*Cleary* v. *Maris Co.*, 173 Misc. 954, 956 [STEINBRINK, J.].) So, generally speaking, "If the injuries were suffered by reason of the patron's allergy to the product or to its ingredients, no right of action exists in favor of the patron on any theory of negligence in manufacture, distribution or use ". (*Ravo* v. *Lido*, 17 A D 2d 476, 482, citing cases; see, also, *Sanders* v. *Clairol, Inc., supra*; *Cleary* v. *Maris Co., supra*; *Singer* v. *Oken*, 193 Misc. 1058; *Kinkead* v. *Lysol, Inc.*, 250 App. Div. 832.)

In light of the foregoing, the plaintiff attempted to make out a case against the defendant on the theory that the defendant was negligent in failing to give due warning of an alleged danger in the use of the product. It is true that, where a particular product, though not poisonous or inherently danger-

ous, may become unreasonably dangerous in its use, a seller or manufacturer may be required to give directions or warning on the container as to the proper use thereof. In the case of the nonpoisonous and reasonably safe product in general use, the duty to warn depends upon whether or not it was reasonably foreseeable by the supplier that a substantial number of the population may be so allergic to the product as to sustain an injury of consequences from its use. (See Tentative Draft No. 7, Restatement, Torts 2d [April 16, 1963], § 402A, subd. j, p. 5.) "If the danger of such an allergy is known or should be known to the maker, and if the consequences of the idiosyncrasy are serious enough, reasonable care may well require the taking of some precaution such as warning and instructions for making tests." (Harper and James, Law of Torts, § 28.8, p. 1551.)

The fundamental test of negligence — reasonable foreseeability of harm and reasonable care to guard against same — is applicable in these cases. The manufacturer or seller may be held liable where he knows or with reasonable diligence should anticipate that the normal use of his product may result in substantial harm and where he fails to exercise reasonable care to warn of such danger. On the other hand, it is clear that the manufacturer or seller should not be held bound to anticipate and warn against a remote possibility of injury in an isolated and unusual case. The law requires a person to exercise reasonable care to guard against probabilities, not mere remote possibilities. A supplier of a product in daily use ought not to be placed in the position of an insurer. We have not yet reached the point where the manufacturer is under the absolute duty of making a product, useful to many, free from all possible harm to each and every individual; nor the point where the manufacturer is to be held under an absolute duty of giving special warning against a remote possibility of harm due to an unusual allergic reaction from use by a miniscule percentage of the potential customers. "Every substance, including food which is daily consumed by the public, occasionally becomes anathema to him peculiarly allergic to it. To require insurability against such an unforeseeable happenstance would weaken the structure of common sense, as well as present an unreasonable burden on the channels of trade." (*Bennett* v. *Pilot Prods. Co.,* 120 Utah 474, 478; *Gerkin* v. *Brown & Sehler Co.,* 177 Misc. 45.)

So, according to the prevailing authority, the existence of a duty on the part of a manufacturer to warn depends upon whether or not, to his actual or constructive knowledge, the

product contains an ingredient " to which a substantial number of the population are allergic " (see Tentative Draft No. 7, Restatement, Torts 2d, *supra*), or an ingredient potentially dangerous to an identifiable class of an appreciable number of prospective customers. (See *Merrill* v. *Beaute Vues Corp.*, 235 F. 2d 893; MURRAH, J., concurring, p. 898.) (See, also, Note, 46 Cornell L. Q. 465 [1961].) "If the allergy is one common to any substantial number of possible users, the seller may be required at least to give warning of the danger." (Prosser, Torts [2d ed.], § 84, p. 503.) On the other hand, " In the ordinary case the maker may also assume a normal user; and he is not liable where the injury is due to some allergy or other personal idiosyncrasy of the consumer, found only in an insignificant percentage of the population." (Prosser, *idem.*)

Knowledge or constructive notice of an unreasonable danger to users of a particular product may impose upon the manufacturer a duty of warning. But, in the case of a useful and reasonably safe product, in general use, the supplier owes no special duty of warning to the unknown few who constitute a mere microscopic fraction of potential users who may suffer some allergic reaction not common to the ordinary or normal person. (See, further, *Bish* v. *Employers Liab. Ins. Co.*, 236 F. 2d 62; *Merrill* v. *Beaute Vues Corp.*, *supra*; *Bennett* v. *Pilot Prods. Co.*, *supra*; *Casagrande* v. *Woolworth Co.*, 340 Mass. 552, 556; *Crotty* v. *Shartenberg's-New Haven*, 147 Conn. 460; *Levi* v. *Colgate-Palmolive Proprietary Ltd.*, 41 New So. W. St. Rep. 48, 58 New So. W. W. N. 63.)

In light of the foregoing, the plaintiff, as the basis for imposing upon defendant a special duty of warning, was bound at the very least to show (1) that she was one of a substantial number or of an identifiable class of persons who were allergic to the defendant's product, and (2) that defendant knew, or with reasonable diligence should have known of the existence of such number or class of persons. There was, however, a failure of proof as to both of these requirements. Furthermore, it does not appear that a special warning here would have been effective for any purpose.

Without question, aluminum sulphate is an ingredient generally used in all deodorant and antiperspirants. These products, containing this particular sulphate, are considered safe for normal skin and are universally used without harm. The plaintiff was one of an unknown and very insignificant few, who, because of a state of hypersensitiveness to the sulphate, unknown even to herself, would acquire dermatitis on the

application of the product to her skin. There was no proof of the precise nature or of the exact cause for her allergy. There was no showing that she was one of any identifiable class of an appreciable number of persons with a similar allergy. Her medical expert did say that there was a class or group of persons who are sensitive to aluminum sulphate but did not elaborate. It does not appear, however, that the members of such class or group were of consequential numbers or exposed to serious and unreasonable danger. The only evidence in this connection was that, in one year, the defendant, in connection with 600,000 sales of its products, had but four complaints of a sensitive reaction in the use of the same; and, for all that appears, the affliction in each case may have been differently caused or comparatively minor. Such evidence establishes no more than a remote possibility of allergic sensitivity in isolated cases to the defendant's product.

Furthermore, the defendant did give notice, by statement on the container, of the presence of aluminum sulphate in the deodorant. If, as further stated on the container, the product was "safe for normal skin"—and there was no credible evidence to the contrary—what special warning would the defendant, acting reasonably, be expected to give to the very exceptional few who, unknown even to themselves, might have an allergy to the aluminum sulphate expressly stated to be contained in the product. This is left solely to a matter of speculation because there is not one iota of evidence in the record as to any customary or adequate mode of warning or as to known or proper tests to be suggested for use by the unknown few who might possibly suffer an allergic reaction.

Of course, the statement that the product contained a particular sulphate was adequate to warn any and all persons who knew that they had an allergy with respect to the same. As to those persons, an additional express warning not to use the product would serve no purpose. Specific words of caution would be meaningless as to those, such as the plaintiff, who did not know of their allergy to the particular sulphate. The plaintiff's prior use of deodorants containing the particular ingredient did not yield any manifestations of sensitivity and she expected none when she applied the defendant's product. So, it is difficult to see that a special warning in general terms of danger to the infinitesimal few with an allergy would be of any help or have persuaded plaintiff here from the purchase and use of defendant's merchandise. Under the circumstances, the special warning would have been wholly ineffective.

(See *Merrill* v. *Beaute Vues Corp., supra*, p. 897.) And the defendant should not be held negligent in failing to give a warning which would have served no purpose.

The conclusion we reach is that the plaintiff failed as a matter of law to establish that the defendant was derelict in any duty of warning to plaintiff. This conclusion is supported by the reasoning underlying the decisions which have denied recovery in these cases on theory of breach of implied warranty. It has been universally held that a person, who sustains harm due solely to an unusual hypersensitiveness to a reasonably safe product, may not recover against the seller or manufacturer on such theory.[1] (See Comment, 25 Fordham L. Rev. 306 [1956]; 46 Cornell L. Q. 465; Ann. 26 A. L. R. 2d 963; 2 Frumer and Friedman, Products Liability, § 29.03, p. 114; *Zampino* v. *Colgate-Palmolive Co.*, 8 A D 2d 304, affd. 8 N Y 2d 1069; *Crotty* v. *Shartenberg's-New Haven, supra*; *Casagrande* v. *Woolworth Co., supra*; *Merrill* v. *Beaute Vues Corp., supra*, p. 898 and cases cited; *Ray* v. *Penney Co.*, 274 F. 2d 519.)

The plaintiff argues that she had normal skin and that the statement " safe for normal skin " on the container was negligent as to her in that it was misleading. But, as afore-noted, her medical expert specifically testified that defendant's product was safe for normal skin. It is true that there was also testi-

---

1. Though not relevant to the decision here, it should be noted, however, that there are "rapid and dramatic changes in the decisions" in reference to product liability on theory of breach of warranty. Tentative Draft No. 10, Restatement of the Law, Second, Torts (April 20, 1964), § 402A, reads as follows:

" § 402A. *Special Liability of Seller of Product to User or Consumer.*

" (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property, is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

" (a) the seller is engaged in the business of selling such a product, and

" (b) it is expected to reach the user or consumer in the condition in which it is sold.

" (2) The rule stated in subsection (1) applies although

" (a) the seller has exercised all possible care in the preparation and sale of his product, and

" (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

By way of comment, it is stated that " [t]he rule is one of strict liability [in the case of a product 'unreasonably dangerous'], making the seller subject to liability to the user or consumer even though he has exercised all possible care in the preparation and sale of the product. * * * The rule here stated is not exclusive, and does not preclude liability based on the alternative ground of negligence of the seller, when such negligence can be proved." (Comment a, Tentative Draft No. 10, *supra*.)

mony that plaintiff had normal skin, but " [a]ny presumption of normality disappeared in the light of the evidence which tended to show that the deodorant and its components were not significant irritants * * *. The general knowledge of allergies * * * of which we take notice, and which is reflected in the testimony, makes it unreasonable to infer from any part or parts of the evidence that a significant number of other persons would have been hurt by the deodorant. Any inference of fact that the product would have hurt 'normal' persons may not be drawn from the evidence of an allergic reaction in one person who has not previously shown sensitivity." (*Casagrande* v. *Woolworth Co.*, 340 Mass. 552, 556, *supra.*)

The plaintiff's brief attempts to support a point that the defendant was negligent in violation of certain Federal and State statutes and regulations with respect to warning labels on containers as hazardous substances. There was no attempt, however, upon the trial to present evidence to sustain any such claim, and the case was not tried or submitted to the jury on the theory of negligence on the basis of any such violation.

We realize, of course, that the conclusions herein reached are inconsistent with the decision of *Wright* v. *Carter Prods.* (244 F. 2d 53). We are not under any constraint to follow this decision because it specifically purports to apply the decisional law as developed in Massachusetts. In any event, we believe that the views herein expressed are not only supported by the weight of authority but also by a common-sense application of general negligence doctrine. Certainly, our conclusions are in accord with many decisions in this State denying recovery against the manufacturer or seller of the reasonably safe products for an injury due solely to the rare allergic reaction or unusual idiosyncrasy of a particular individual. (See *Karr* v. *Inecto, Inc.*, 247 N. Y. 360, *supra*; *Zampino* v. *Colgate-Palmolive Co.*, 8 A D 2d 304, affd. 8 N Y 2d 1069, *supra*; *Ravo* v. *Lido*, 17 A D 2d 476, *supra*; *Sanders* v. *Clairol, Inc.*, 2 A D 2d 857, *supra*; *Kinkead* v. *Lysol, Inc.*, 250 App. Div. 832, *supra*; *Willson* v. *Faxon, William & Faxon*, 138 App. Div. 359, *supra*; *Singer* v. *Oken*, 193 Misc. 1058, *supra*; *Cleary* v. *Maris Co.*, 173 Misc. 954, *supra*; *Lehner* v. *Procter & Gamble Mfg. Co.*, 208 Misc. 186.)

Since the plaintiff failed as a matter of law to establish negligence of the defendant, the defendant's motion to dismiss, made at the close of the case, should have been granted. Consequently, the order of the Appellate Term, affirming the judgment for plaintiff entered upon the verdict of the jury rendered in City Court, should be reversed on the law, with costs, the

judgment for plaintiff vacated and the complaint dismissed, with costs to defendant.

BOTEIN, P. J., VALENTE, STEVENS and STALEY, JJ., concur.

Determination unanimously reversed, on the law, with costs to the appellant in this court and in the Appellate Term, the judgment for plaintiff vacated and the complaint dismissed.