**Estelle CHWAT**

v.

**SMITHKLINE BEECHAM CORP.**

No. 91 CV2616.

United States District Court,
E.D. New York.

April 7, 1993.

Estelle Chwat, pro se.

Schoeman, Marsh & Updike (Beth L. Kaufman and Amy R. Stein, of counsel), New York City, for defendant.

## MEMORANDUM AND ORDER

NICKERSON, District Judge:

Plaintiff *pro se* brought this diversity action against defendant, a pharmaceutical company, alleging that defendant was negligent in failing to inform her of a possible allergic reaction to its product "Ecotrin," a coated delayed-release aspirin manufactured by defendant since 1956. Plaintiff seeks $2 million in damages.

Defendant moves for summary judgment.

Plaintiff is not represented by an attorney. She says that in her attempts to retain one she has spoken to at least twenty-one attorneys who declined to accept her case on a contingency fee basis because they found it too weak.

### I.

The affidavits, exhibits and plaintiff's deposition show that most of the critical facts are not in dispute.

Defendant manufactures Ecotrin, which contains .023 mg. per caplet of the dye "FD & C Yellow No. 6" (Yellow No. 6). Ecotrin meets or exceeds all applicable standards under the Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301–394.

The entry regarding Ecotrin in the Physician's Desk Reference lists "gastrointestinal symptoms" as a possible adverse reaction to aspirin and FD & C Yellow No. 6 as an inactive ingredient.

Yellow No. 6 is one of the most commonly used color additives and is present in numerous drugs and prepared foods. Prior to 1986, the United States Food and Drug Administration (FDA) required manufacturers to list Yellow No. 6 as an ingredient because it suspected the dye was an allergen. But in 1986, after reviewing the studies and finding "no clear cases of hypersensitivity," the FDA concluded that no warning for Yellow No. 6 was warranted.

Although not required by law after 1986, defendant continued to list Yellow No. 6 as an ingredient on Ecotrin's label. The batch of Yellow No. 6, used in the Ecotrin consumed by plaintiff, was certified by the FDA for use in foods, drugs and cosmetics.

Defendant has received 37 complaints about Ecotrin, of which 1.3 billion pills have been sold from January 1988 to October 1989, and has no record of any lawsuits brought for alleged injuries from Ecotrin. Plaintiff submits a computer-generated list from the FDA dated October 19, 1992, listing 69 undated complaints about Ecotrin.

Plaintiff describes the symptoms of her alleged allergic reaction as follows: "throat closing; severe heaviness in chest; rectal bleeding; pains in stomach; inflamed esophagus, intestine and stomach; spitting up blood...." Plaintiff also alleges that as a result of taking Ecotrin she is now more sensitive to dyes in foods and cosmetics.

The *record* shows that plaintiff has a history of gastrointestinal and other problems dating back two decades.

In 1973 plaintiff was hospitalized after complaining of "severe right flank pain ... 2 weeks history of severe lower abdominal pressure." Plaintiff was diagnosed with arteriosclerotic heart disease with angina pectoris. In 1974 plaintiff was treated at the American Health Foundation for dyspnea (difficulty breathing). In 1986 plaintiff was hospitalized after complaining of faintness, chest pain, coldness, and "pounding sensation in her epigastrium" and diagnosed as having had a possible seizure.

In August of 1989, before she consumed Ecotrin, plaintiff was hospitalized after complaining of "abdominal discomfort, flatulence and pressure in her epigastrium" as well as "headache, severe dizziness, nausea ... some intolerance to certain foods." A letter from a Dr. Robert Karol dated June 4, 1990 states that she "had urticaria [hives] from perfume approximately one year ago."

In 1989, after treating her for hypertension, plaintiff's cardiologist recommended that she take Ecotrin, "safety-coated" aspirin.

In her deposition testimony plaintiff stated that she read only that Ecotrin was safety-coated; she did not examine the package or keep the box because she trusted her doctor's judgment and also assumed that "safety-coated" meant safe for her to take.

Plaintiff took one Ecotrin pill per day between September 28 and October 9, 1989. On October 9, 1989, plaintiff was treated in Georgetown Hospital's Emergency Room after she experienced gastric distress and choking. The attending physician's diagnosis was gastritis.

Plaintiff did not take Ecotrin after October 9.

Plaintiff was hospitalized in Parkway Hospital in Queens October 14–20, 1989 and her diagnosis on discharge was as follows: (1) rectal bleeding, (2) arteriosclerotic heart disease, (3) coronary insufficiency, (4) essential hypertension, (5) hiatus hernia without esophagitis, (6) small internal/external hemorrhoids, (7) overweight, and (8) urethral meatal stenosis.

Plaintiff was hospitalized again at Parkway Hospital from April 17 to 20, 1990 and was diagnosed with hematemesis (vomiting blood), hiatal hernia and esophagitis.

II.

Under Fed.R.Civ.P. 56(c) the court will grant summary judgment if the evidence shows that there is no genuine issue as to any material fact and that the movants are entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). On the motion the court views the record in the light most favorable to the non-movant and resolves all ambiguities and draws all reasonable inferences against the movants. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 57 (2d Cir.1987).

It is undisputed that plaintiff experienced an allergic reaction to perfume and intolerance to certain foods before taking Ecotrin and that she had been hospitalized for gastrointestinal problems prior to October 9, 1989.

Plaintiff has not submitted a single medical finding or opinion that the symptoms she experienced on October 9, 1989 and thereafter were caused by Ecotrin. Indeed she testified in her deposition that no physician has said with a reasonable degree of medical certainty that Ecotrin caused any of her physical ailments. She has evidently not participated in any elimination diet or other procedure to determine the cause of her alleged allergy.

The evidence shows only that plaintiff reported to a doctor that she might have suffered an allergic reaction to Yellow No. 6, or another ingredient in Ecotrin. As stated in Dr. Karol's June 4, 1990 letter "patient experienced an acute allergic reaction that *might* have been triggered by Ecotrin.... The patient was advised to avoid yellow dye, *if* the latter might have contributed to her acute allergic reaction last October." (emphasis added).

Defendant on the other hand submits credible affidavit evidence that Yellow No. 6 did not cause plaintiff's medical problems.

Defendant's immunology expert, a Dr. Ronald Simon, describes clinical tests he has conducted since 1986 on human sensitivity to Yellow No. 6 and says, "to a reasonable degree of medical certainty there is no medical evidence of any human sensitivity reactions to FD & C Yellow No. 6."

Defendant's toxicology expert, a Dr. Joseph Borzelleca, says that on the basis of his studies, and plaintiff's weight, "to a reasonable degree of medical certainty ... there would be no adverse effects of ingesting the amount of Yellow No. 6 that would be present in the 12 Ecotrin caplets that plaintiff here consumed over a twelve day period."

Plaintiff has shown no genuine issue of fact as to whether Ecotrin caused plaintiff's medical problems. Absent a showing that Ecotrin caused her injuries, plaintiff cannot recover. *See Schimmenti v. Ply Gem Industries, Inc.,* 156 A.D.2d 658, 549 N.Y.S.2d 152, 154 (2d Dep't 1989).

In any event, even if plaintiff could prove that she experienced an adverse reaction to Ecotrin, she could not recover unless the defendant knew or should have known that "the product contains an ingredient 'to which a substantial number of the population are allergic.'" *Kaempfe v. Lehn and Fink Products Corp.,* 21 A.D.2d 197, 249 N.Y.S.2d 840, 845 (1st Dep't 1964), *aff'd,* 20 N.Y.2d 818, 284 N.Y.S.2d 708, 231 N.E.2d 294 (1967). *See also Young v. United States,* 542 F.Supp. 1306, 1311 (S.D.N.Y.1982) (citing *Kaempfe*); *cf. Holmes v. Grumman Allied Industries,* 103 A.D.2d 909, 478 N.Y.S.2d 143, 145 (3d Dep't 1984) (holding *Kaempfe* inapplicable because defendant with actual or constructive notice "of unreasonable danger to users may [have] a duty of warning"). Plaintiff has made no such showing. Of the number of complaints about Ecotrin, minuscule in relation to the amount of the product sold, none resulted in a lawsuit for injuries. Under the circumstances the defendant had no duty to warn as to the possibility of injuries it could not foresee.

While plaintiff says that Yellow No. 6 is a known allergen and that the Ecotrin she consumed was defective, the evidence does not support this.

Plaintiff submits one medical article describing a physician who conducted blind tests on himself and concluded that Yellow No. 6 caused him severe abdominal cramps. He experienced a reaction after four days of taking two pills per day containing 8 mg. each of the Yellow No. 6 and in a second test after consuming two 8 mg. pills in one day. The subject's prior allergic attacks, which he attributed to Yellow No. 6, cleared after two days on a clear liquid diet.

Defendant's immunology expert Dr. Simon notes that the pills consumed by the subject contained 300 times the amount of Yellow No. 6 contained in each Ecotrin tablet. Dr. Simon also challenges the scientific accuracy of a study conducted by a general practitioner on himself as the sole subject and principal author of the study.

Plaintiff submits a communication from the Swedish Institute that Yellow No. 6 has been banned in Sweden because of its "toxic characteristics ... [that] can result in allergies and even cancer." Plaintiff also submits a letter from the Norwegian Information Service stating that Norway has banned Yellow

No. 6 in pharmaceuticals since 1979. According to Dr. Simon, Norway and Sweden have banned all color additives, not just Yellow No. 6, since 1979.

Plaintiff asserts that Ecotrin was defective for the following reasons: (1) Ecotrin was misbranded under 21 U.S.C. § 352(a), (2) defendant failed to file a New Drug Application for Ecotrin, (3) the lot number of the Ecotrin she consumed was preceded by an "X" indicating it was contaminated, (4) a spectrophotometer at defendant's Philadelphia plant was not calibrated every six-months between 1987 and 1989, as required, and (5) the Yellow Dye Nos. 6 & 10 used in Ecotrin were not certified as required by 21 U.S.C. § 376(a)(1)(B)(i) *redesignated* § 379e(a)(1)(B)(i).

 A failure to warn may constitute a violation of 21 U.S.C. § 352(a), which states that a product whose "label is false and misleading in any particular" shall be deemed misbranded. *Ezagui v. Dow Chemical Corp.*, 598 F.2d 727 (2d Cir.1979). But plaintiff has not shown that the description "safety-coated aspirin" on Ecotrin's label constituted an actionable failure to warn. *See Kaempfe*, 249 N.Y.S.2d at 848 (defendant not negligent in labelling its deodorant "safe for normal skin" absent showing that significant number of consumers experienced allergic reaction).

In response to plaintiff's second, third and fourth assertions of a defect, defendant submits an affidavit from a Charles Muller, its Director of Quality Control. He swears to the following. First, that defendant was not required to file a New Drug Application for Ecotrin because it complies with the United States Pharmacopeia, which governs the formulation of over-the-counter drugs. Second, that a spectrophotometer is not used in the production of Ecotrin. Third, that the lot number of the Ecotrin plaintiff consumed contained an "X" because it was a batch of "caplets," a relatively new form of Ecotrin. All batches of caplets produced at that time were labelled with "X" lot numbers. Plaintiff submits no evidence to contradict the affidavit.

Defendant has submitted copies of FDA certification of the batch of Yellow No. 6 used in the batch of Ecotrin consumed by plaintiff.

### III.

Because there is no genuine issue of material fact, defendant's motion for summary judgment is granted.

So ordered.