**ALBERTO-CULVER COMPANY,**
Appellant,

v.

**Lucille MORGAN et vir, Appellees.**

No. 7056.

Court of Civil Appeals of Texas.

Beaumont.

Sept. 4, 1969.

Rehearing Denied Sept. 25, 1969.

King, Sharfstein & Rienstra, Beaumont, for appellant.

Paul Higgins, Beaumont, for appellees.

PARKER, Chief Justice.

This is a products liability case brought by the appellees, Lucille Morgan and husband, Sidney Morgan, against Alberto-Culver Company, appellant, to recover damages as the result of alleged injuries she sustained to her scalp after using a hair coloring known as New Dawn, manufactured by appellant.

Trial was to a jury, and, based upon jury findings of actionable negligence and breach of express warranty on the part of appellant, judgment was entered in favor of appellees against appellant in the amount of $5,509.80.

Judgment of the trial court is reversed and judgment rendered that appellees take nothing as against appellant. The parties will be designated by name or as appellees and appellant.

Appellant timely presented its Motion for Instructed Verdict on grounds that, inter alia, the undisputed evidence showed as a matter of law that appellant owed no duty unto Mrs. Morgan; there was no evidence that the product, New Dawn, was not reasonably fit for its intended use by an appreciable number of persons; there was no evidence that the product, New Dawn, used by Mrs. Morgan contained any foreign substances, foreign properties, defects, or impurities of any character; the undisputed evidence showed as a matter of law that any injuries suffered by Mrs. Morgan by virtue of her use of the product, New Dawn, were brought about by an abreaction to the use thereof; and, there was no evidence that the product, New Dawn, did not result in an allergic reaction by Mrs. Morgan. This Motion for Instructed Verdict was overruled by the trial court, to which action the appellant excepted.

The case was then submitted to the jury, which returned its verdict to the effect that the failure of appellant in its television advertisements to give any warning of the dangerous effects of using New Dawn constituted material misrepresentations proximately causing Mrs. Morgan's injuries and that appellant was guilty of actionable negligence in the following respects: (1) failure to advise Mrs. Morgan of the injuries that might occur to her if she was allergic or hypersensitive to New Dawn; (2) failure to instruct as to the proper course of procedure to follow in the event of discovery of injury by the use of New Dawn; (3) use of the advertisement of "So easy to do * * * Apply like shampoo"; (4) failure to direct adequate allergy tests to be performed prior to the use of New Dawn; (5) failure to provide information as to symptoms occurring as a result of injury from the use of New Dawn which would require medical attention; (6) supplying of misleading directions with New Dawn as to the dangers involved in its use; and (7) failure to adequately warn Mrs. Morgan of the dangers involved in using New Dawn. The jury exonerated Mrs. Morgan of con-

tributory negligence and found that the occurrence in question was not an unavoidable accident. Special Issue No. 30 was submitted as follows:

"Do you find from a preponderance of the evidence that Mrs. Morgan's injuries, if any, were an abreaction to the product New Dawn?"

Special Issue No. 30 was answered, "No." Accompanying Special Issue No. 30 was the following definition:

" 'Abreaction', as used herein, means an unusual reaction resulting from a person's unusual susceptibility to the product or intended effect of the product in question; that is, such person's reaction is different in the presence of the product in question from that in the usual person. An abreaction is one in which an unusual result is produced by a known or theoretical mechanism of the action. An abreaction is one which could not have been reasonably foreseen in an appreciable class or number of potential users prior to April 14, 1965."

After the return of the jury's verdict, and before entry of judgment, appellant duly filed its Motion for Judgment Non Obstante Veredicto on the following grounds, inter alia, that the undisputed evidence showed as a matter of law that appellant owed no duty unto Mrs. Morgan, and that the undisputed evidence showed as a matter of law that any injuries suffered by Mrs. Morgan were solely and alone caused and brought about as the result of allergy or hypersensitivity. Said Motion for Judgment Non Obstante Veredicto was overruled by the trial court, and judgment was entered on the verdict in favor of appellees and against appellant, to which appellant excepted.

Thereafter, appellant duly and timely filed its Amended Motion for a New Trial again urging error by the trial court in overruling its Motion for Instructed Verdict and Motion for Judgment Non Obstante Veredicto; also, that the answer of

the jury to Special Issue No. 30 was so contrary to the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. Said Amended Motion for a New Trial was overruled by the trial court.

In appellant's Points of Error Nos. 1 through 7, it has no-evidence points of error. These will be considered together. In passing upon these no-evidence points, we consider only the evidence favorable to the findings of the jury. Each and all are sustained. Such points of error are:

## "FIRST POINT OF ERROR

"The undisputed evidence showing as a matter of law that Appellant owed no duty unto Appellee, Mrs. Morgan, the trial court erred in overruling Appellant's Motion for Instructed Verdict.

## "SECOND POINT OF ERROR

"There being no evidence that the product New Dawn was not reasonably fit for its intended use by an appreciable number of persons, the trial court erred in overruling Appellant's Motion for Instructed Verdict.

## "THIRD POINT OF ERROR

"There being no evidence that the product New Dawn used by Appellee, Mrs. Morgan, contained any foreign substances, foreign properties, defects or impurities of any character, the trial court erred in overruling Appellant's Motion for Instructed Verdict.

## "FOURTH POINT OF ERROR

"The undisputed evidence showing as a matter of law that Appellant owed no duty unto Appellee, Mrs. Morgan, the trial court erred in overruling Appellant's Motion for Judgment Non Obstante Veredicto.

## "FIFTH POINT OF ERROR

"The undisputed evidence showing as a matter of law that any injuries suffer-

ed by Appellee, Mrs. Morgan, by virtue of her use of the product New Dawn were brought about by an abreaction to the use thereof, the trial court erred in overruling Appellant's Motion for Instructed Verdict.

## "SIXTH POINT OF ERROR

"There being no evidence that the product New Dawn did not result in an allergic reaction by Appellee, Mrs. Morgan, to her use thereof, the trial court erred in overruling Appellant's Motion for Instructed Verdict.

## "SEVENTH POINT OF ERROR

"The undisputed evidence showing as a matter of law that any injuries suffered by Appellee, Mrs. Morgan, were solely and alone caused and brought about as the result of allergy or hypersensitivity, the trial court erred in overruling Appellant's Motion for Judgment Non Obstante Veredicto."

On the box of New Dawn purchased by Mrs. Morgan is found the following:

"CAUTION: This product contains ingredients which may cause skin irritation on certain individuals. A preliminary test according to enclosed directions should first be made. Do not use for dyeing the eyelashes or eyebrows; to do so may cause blindness. Read enclosed directions carefully before using."

The directions enclosed within the box of New Dawn said:

"READ THIS BOOKLET THOROUGHLY BEFORE YOU BEGIN." and in boldface:

"DO READ ALL THE INSTRUCTIONS BEFORE STARTING AND FOLLOW CAREFULLY." and finally:

"HYPERSENSITIVITY—AND HOW THE PATCH TEST PROTECTS YOU

It has long been recognized that certain individuals for undetermined reasons

may be allergic or hypersensitive to foods, drugs, cosmetics or many other substances or materials that are harmless to the average person. Of the millions of women using or contemplating the use of a hair coloring, a limited few may be allergic or hypersensitive to it. The method employed to detect such skin hypersensitivity is the Preliminary Patch or Skin Test, as prescribed for hair colorings under the Federal Food, Drug and Cosmetic Act. Therefore, this product carries no warranty, express or implied, as to freedom from any unfavorable effects of its use on the few who may be allergic or hypersensitive to it.

MAKE THIS PRELIMINARY PATCH OR SKIN TEST 24 HOURS BEFORE EVERY APPLICATION  *  *  *

to ascertain whether a person is hypersensitive or allergic to this product.

1. With bland soap and water, wash an area about the size of a quarter (¾ of an inch) on the inner fold of the elbow or behind either ear, and extending partly into the hairline. Dry by patting with absorbent cotton.

2. To prepare the test solution, mix a capful of NEW DAWN Permanent Hair Color with an equal amount of NEW DAWN Creme Lotion Developer, using materials contained in this package.

3. With an absorbent, cotton-tipped applicator, mix thoroughly and apply the test solution to the previously cleansed area.

4. Allow test area to dry. Leave uncovered and undisturbed for 24 hours.

5. Examine test area after 24 hours.

CAUTION: If any burning, itching, swelling, irritation or eruption is experienced in or around the test area at any time during the test period, you MUST NOT use this product. If test result proves negative, you may proceed with hair coloring application immediately. Do not apply this product to the hair where the scalp or adjacent area shows any evidence of abrasion, eruption, or other diseased condition. Do not use this product on eyebrows or eyelashes as medical science has not devised any safe method for determining the possible effect of hair coloring preparations on the delicate areas around the eyes and on the optic tissues."

After appellant, Mrs. Morgan, made the purchase of New Dawn, she read the instructions contained in the box, noticing thereon that a patch test was to be performed. She understood the instructions thoroughly. Mrs. Morgan then performed the patch test on her left arm and at her hairline, following the directions that came with the product. She had no reaction to the patch test, and the New Dawn was applied to her hair the following Saturday evening, April 17, 1965. Before applying New Dawn to her hair that Saturday evening, she again read the instructions. After applying it to her hair, it burned a little bit, but during the night, she could not sleep well because her scalp began to itch and feel as if it were getting tight. She first got up in the night for this about two o'clock. Sunday morning she called Dr. North, but could not reach him. That day she called no other doctor. Monday morning, she did get to see Dr. North. By this time, she had little water blisters all over her scalp and forehead.

Upon trial hereof, Dr. North testified that he first saw Mrs. Morgan for this contact dermatitis condition on Monday, April 19, 1965. He diagnosed her condition as allergic contact dermatitis after she related a history that during Saturday night and the early hours of Sunday morning she awoke with eruptions and rash.

New Dawn is an oxidation type hair dye. It is a two-bottle preparation. One bottle contains a solution of dye-forming compounds. The second bottle is a developer. The contents of these two bottles must be

mixed immediately prior to application to the hair. The reaction between the contents of the two bottles develops the dye on the hair. Kass testified that he was Vice-President of research and development for Alberto-Culver Company. New Dawn was placed on the market in June of 1963, with a direction insert in the package with the bottles. The same instruction sheet, with only minor changes, was the one the Alberto-Culver Company was shipping in 1965 and on April 14, 1965. Kass was a chemist who specialized in cosmetics for several years, was a lecturer at Illinois Medical School in dermatology. He has no license to practice medicine in any state. He testified that he was an employee of Alberto-Culver Company; that said company advertised New Dawn hair coloring on television, but never broadcast any warning as to the dangers in the use of New Dawn or any precautionary measures to tests on television to be done prior to using this hair coloring on television, newspapers or radio; that specific pre-use safety measures are spelled out in the package containing New Dawn bottles, which is required by law. Having charge of the records as to all complaints of every nature as to the use of New Dawn, he testified that there were some 5 complaints by law suit or otherwise for every million bottles sold by Alberto-Culver Company.

Dr. North, appellee's physician, testified: That in his opinion it was a reasonable medical probability that Mrs. Morgan's contact dermatitis was a result of her using New Dawn in that she was allergic to the product or some component thereof. He defined the term "allergic" to mean a reaction that is peculiar to the individual of the reaction to it (sic). Upon cross-examination, Dr. North said Mrs. Morgan suffered an abreaction to the product. Before answering this question, the term "abreaction" was defined for Dr. North in the exact language used later in the charge, and which we have quoted. Dr. North further testified that the patch test is extensively used in the medical profession in testing for allergies. By applying whatever you are using to a small area of the skin, it can be seen whether there is a reaction on the small area before used on an extensive area. There is no evidence to the contrary.

There is no evidence: (a) of the chemical composition of New Dawn or what particular ingredient in New Dawn irritated Mrs. Morgan's hair and scalp, the residue of the liquid used by Mrs. Morgan having been thrown away; (b) that the product, New Dawn, was not reasonably fit for its intended use for an appreciable number of persons; (c) that appellant's product, New Dawn, was not reasonably fit for its intended use by all potential users except a very small minute number having an allergic reaction thereto would be injured; (d) that appellant's product, New Dawn, was defective in any way for its intended use or inherently dangerous except as to a small minute number of potential users subject to an allergic reaction; and (e) that the product, New Dawn, used by Mrs. Morgan contained any foreign substances, foreign properties, defects, or impurities of any character.

It is undisputed that the patch test is an adequate allergy test. It is undisputed that only a very small minute number of potential users of New Dawn would be injured by the use thereof.

■ Mere proof of injury from the product of itself furnishes no rational basis for inferring that the product was defective for its intended use. Helene Curtis Industries, Inc. v. Pruitt, 385 F.2d 841 (5th Cir., 1967).

The undisputed evidence in this case as to the cause of Mrs. Morgan's injuries for using New Dawn is that she was allergic or hypersensitive to the product or some component thereof, which appellant alleged in its First Amended Original Answer, as follows:

"For further answer, defendants say that if plaintiff's alleged injuries were in any-

wise caused by the use of 'NEW DAWN', which causal connection is expressly denied by these defendants, then and in such event, defendants say that the plaintiff was allergic and hypersensitive to some normal and usual ingredient in said product, and that she suffered an abreaction to the use thereof, which hypersensitive and allergic propensities of the plaintiff and her abreaction to the use of said product could not have been reasonably foreseen in an appreciable class or number of potential users of said product."

By virtue of such pleadings by appellant, it became incumbent upon Mrs. Morgan to either negate any allergy or hypersensitivity or to show that she was part of an appreciable class or number of persons who would have been reasonably foreseen to have been harmed by the product, New Dawn. Cudmore v. Richardson-Merrell, Inc., 398 S.W.2d 640 (Dallas Civ.App., 1965, error ref. n. r. e.); Helene Curtis Industries, Inc. v. Pruitt, supra. This she failed to do. In fact, her own medical witness, Dr. North, testified that Mrs. Morgan's reaction "could not have been reasonably foreseen in an appreciable class or number of potential users of the product before its use at the time the reaction took place." Thus, Mrs. Morgan, by her failure to discharge her burden of proof, has failed to show that she was within the class of persons to which appellant owed any duty. This burden of proof is set forth in Esborg v. Bailey Drug Co., 61 Wash.2d 347, 378 P.2d 298, 304 (1963), as follows:

"On the other hand, it would appear reasonable to require of a plaintiff, seeking to establish a breach of such warranties, when confronted with the defense of allergy or hypersensitivity, that such plaintiff produce substantial evidence which, with the reasonable inferences therefrom, will support findings that: (a) the product involved contains a harmful ingredient; (b) such ingredient is harmful to a reasonably foreseeable

and appreciable class or number of potential users of the product; and (c) plaintiff has been innocently injured in the use of the product in the manner and for the purpose intended."

The doctrine of strict liability to encompass any defective product which causes physical harm to persons clearly is the law of Texas. McKisson v. Sales Affiliates, Inc., 416 S.W.2d 787 (Tex.Sup., 1967); Helene Curtis Industries v. Pruitt, supra; McDevitt v. Standard Oil Company of Texas, 391 F.2d 364 (5th Cir., 1968).

C. A. Hoover and Son et al. v. O. M. Franklin Serum Company, Tex.Sup.Ct., 444 S.W.2d 596 (July 9, 1969) involved a case where a serum was found by a jury to be unfit for its intended use, not because of its formula, but because sold in a defective condition. In the instant case, there is no such finding. In Cudmore v. Richardson-Merrell, Inc., supra, it was held that in this type of case the burden was on the user of the product to show that he was a part of an appreciable class of persons who might have been foreseen to have been harmed by taking of defendant manufacturer's drug at the time he was taking it in order that he could recover for breach of implied warranty. The Dallas Court cited Howard v. Avon Products, Inc., 155 Colo. 444, 395 P.2d 1007 (En Banc, 1964), where, on page 1010, it is said:

"The identifiable class or significant number concept has, with minor semantic variations, been articulated in the following cases: Crotty v. Shartenberg's New Haven, Inc., 147 Conn. 460, 162 A.2d 513 ('appreciable number'); Magee v. Wyeth Laboratories, Inc., 214 Cal.App. 2d 340, 29 Cal.Rptr. 322 ('substantial portion of possible users'); Esborg v. Bailey Drug Co., 61 Wash.2d 347, 378 P.2d 298 ('reasonably foreseeable and appreciable class or number of potential users'); Merrill v. Beaute Vues Corp., 10 Cir., 1956, 235 F.2d 893 ('reasonable foreseeable idiosyncracies'). To go any further than the rule announced in these

cases with respect to the liability of a manufacturer of a product would be to impose upon him the liability of insurer or liability without fault. This we decline to do."

See also: Pittsburgh Coca-Cola Bottling Co. v. Ponder, 443 S.W.2d 546, (Tex.Sup., June 4, 1969); Keeton, "Products Liability—Proof of Manufacturer's Negligence," 49 Va.L.R. 675, 676 (1963); Keeton, "Products Liability—Problems Pertaining to Proof of Negligence," 19 S.W. Law Jrl. 26, 27 (1965); Esborg v. Bailey Drug Co., supra. This court considers the above statements and authorities to be in keeping with the inferences and holdings of the Supreme Court of this State, which has adopted § 402(a), Restatement of Torts.

■ Appellant owed no duty to Mrs. Morgan to warn her of the dangerous effects of using New Dawn, because there is no evidence that she belonged to an appreciable class or number of potential users of New Dawn the manufacturer could reasonably have foreseen would have received injuries by the use thereof. Cudmore v. Richardson-Merrell, Inc., supra; Restatement of Torts 2d, § 402(a), Comment (j).

Mrs. Morgan was not aware of any allergy or hypersensitivity prior to her use of New Dawn and there is no evidence that any warning to her in advertisements would have been in anywise effective. Merrill v. Beaute Vues Corp., 235 F.2d 893 (10th Cir., 1956); Kaempfe v. Lehn & Fink Products Corp., 21 A.D.2d 197, 249 N.Y.S.2d 840, affirmed 20 N.Y.2d 818, 284 · N.Y.S.2d 708, 231 N.E.2d 294 (1967). Contrary to the holdings in the above cases, are a few cases, among them being one relied upon by appellees, Wright v. Carter Products, 244 F.2d 53 (2nd Cir., 1957). We follow the majority decisions on this point.

Appellant's points of error one through seven, inclusive, are sustained. The other points of error of appellant are not passed

on herein because they have become immaterial.

Judgment of the trial court is reversed and judgment here rendered that appellees, Lucille Morgan and Sidney Morgan, take nothing as against the appellant, Alberto-Culver Company. All costs are adjudged against appellees.