**Harry J. YOUNG, Appellant,**

v.

**H. L. WARREN, Appellee.**

No. 7068.

Court of Civil Appeals of Texas.

Beaumont.

Sept. 4, 1969.

Rehearing Denied Sept. 25, 1969.

Ewers, Toothaker, Ewers, Abbott & Evins, McAllen, for appellant.

Kelley, Looney, McLean & Alexander, Edinburg, for appellee.

STEPHENSON, Justice.

Plaintiff, H. L. Warren, brought this action against defendant, Harry J. Young, to recover the sum of $8,000.00 alleged to be the reasonable market value of an undivided one-half interest in a piece of real estate, conveyed by plaintiff to defendant. Trial was by jury, and judgment was rendered for plaintiff in the amount of $5,169.00, plus interest. The parties will be referred to here as they were in the trial court.

Plaintiff and defendant were brothers-in-law, and had owned this real estate since 1949. These two constructed a building on this land and the property has been occupied by Red Arrow Freight Lines throughout the tenure of their joint ownership. A pleasant relationship was brought to an abrupt conclusion by the following telegram and letter:

"1966 MAR 28, AM 7 43

* * *

"HENRY L WARREN=

"NO 48 FORT BROWN BROWNSVILLE TEX=

"HENRY I HAVE NO INTENTION OF SIGNING NEW LEASE WITH RED ARROW UNLESS YOU ARE INTERESTED ENOUGH TO SIGN BEFORE YOU LEAVE I AM WRITING RED ARROW ENCLOSING COPY OF THIS TELEGRAM SO THEY WILL BE INFORMED I DONT EVEN KNOW WHETHER THEY WANT TO LEASE AGAIN=

"HARRY J YOUNG."

* * * * * *

"Brownsville, Texas,
March 28, 1966.

"Dear Harry:

"I'm sorry that I was unable to communicate my intentions to you. I am not attempting to shirk my responsibilities concerning this property, and never have. Since there is so much more involved than these three lots I believe that you should always make whatever decisions you think best for the remain-

der of your holdings, and have made my decisions conform.

"Just now I am caught in a predicament. I have already paid more that [sic] thirty five hundred dollars on the trip that we are planning and the most of it is non-returnable if we fail to meet our commitments. Therefore, whatever I am to do about this property must be done by Thursday night of this week or must be postponed until after June 1.

"Enclosed is a deed to the property, made out to you. If the description is faulty or if there is anything else lacking, have another one prepared and I will execute it. In return, just send me a check for whatever amount you think is a fair price for my half interest. This has been a good investment for us and we have appreciated having it.

"If the check would not reach me by Thursday just mail it to Patty at 1018 S. 16th St., Harlingen, as she is taking care of my affairs while we are away.

"I am sure that this is the best way to handle this matter. I see no reason why my half-interest in these three lots should interfere with any plans that you may have for development of your property there and am happy to return it to you.

"Sincerely,
"[/s/] Henry"

The evidence shows: That the defendant received such deed enclosed in the letter, which he filed for record. That plaintiff made the trip to Teheran and returned. That sometime later, defendant offered to pay plaintiff $3,000.00 for such half interest. Plaintiff declined and brought this suit.

This case was submitted to the jury on two special issues. In response to the first, the jury found that defendant did not believe the sum of $3,000.00 to be a fair price for the one-half interest in such property. The jury then found $5,169.00 to be the reasonable cash market value on March 28, 1966 of plaintiff's one-half interest in the property.

Defendant has a point of error that the first jury finding is contrary to the great weight and preponderance of the evidence. In passing upon this point, we consider the entire record before us. Plaintiff testified that he did not think $3,000.00 was a fair price for his half interest in the property, because of the value of the property and because of the income from the property. Defendant was asked if he thought $3,000.00 was a fair price to which he replied: "No, I didn't, but I wanted to get out from under it. There is a long story there." When defendant was asked how he arrived at the figure he gave this testimony:

"A.  O' boy! Well, I figured it was just all right. I said 'I'll give you three thousand dollars and we'll be through.'

"Q.  Did you take into consideration the property itself?

"A.  I just * * * he offered to let it stay there and rot, and so did I. I wasn't going to do anything with it, and he wasn't going to do anything with it, and that would be it.

*      *      *      *      *      *

"Q.  But as far as this particular property, its value, you did not take that into consideration at all?

"A.  No, I didn't. I didn't want it. I didn't want to deal with it any more."

Defendant admitted he had no actual basis for arriving at the $3,000.00 figure.

Mrs. J. Neal Murphy, plaintiff's daughter, and defendant's niece, testified that defendant told her he knew it wasn't fair, but it was all he had. One appraisal witness placed the reasonable cash market value of the entire property, at the time of the delivery of the deed by plaintiff to defendant, to be between $13,000.00 and $13,-

500.00. The other placed the value at $7,-725.00. We do not find the answer of the jury to be clearly wrong or manifestly unjust. The point of error is overruled.

Defendant has a series of points of error complaining of the action of the trial court in submitting an issue as to the fair cash market value of the land involved, and in entering judgment for plaintiff allowing him to recover the fair cash market value. Defendant argues that plaintiff agreed to accept an amount of money that defendant thought was a fair price, and that fair cash market value had no place in this law suit. Defendant argues further that the issue which should have been submitted to the jury to determine what defendant thought was a fair price.

The letter of March 28, 1966, together with the deed, constituted an offer on the part of plaintiff to sell his one-half interest in the property to defendant. The action on the part of defendant in recording the deed constituted an acceptance by defendant of plaintiff's offer. However, defendant then breached the contract by not paying plaintiff an amount of money which he, the defendant, thought was fair. Not only do we have the finding by the jury, supported by the evidence, that defendant did not make an offer which he thought was fair, but there was no evidence in the record which would have supported a finding to the contrary. No rescission of the contract was sought, and because of defendant's actions of improving the property and making a new lease with Red Arrow, it would not have been equitable to have granted such relief if it had been sought. Under these circumstances, there was no way plaintiff could be put back in his original position before his offer was made.

We do not consider this contract to be unenforceable on the part of either plaintiff or defendant merely because no specific amount of money was mentioned in the offer to sell. We consider this situation to be similar to the one mentioned in

that line of cases represented by Atomic Fuel Extraction Corporation v. Slick's Estate, 386 S.W.2d 180, 185 (San Antonio Tex.Civ.App., 1964). That case involved the question as to one party's promise being conditioned upon satisfactory performance by the other party, and is quoted as follows:

"As stated in 5 Williston on Contracts (3rd Ed.) § 675A: 'It has been questioned whether an agreement in which the promise of one party is conditional on his own or the other party's satisfaction contains the elements of a contract —whether the agreement is not illusory in character because conditioned upon the whim or caprice of the party to be satisfied. Since, however, such a promise is generally considered as requiring a performance which shall be satisfactory to him in the exercise of an honest judgment, such contracts have been almost universally upheld.' The decision must be made in good faith. Golden State Mutual Life Ins. Co. v. Kelley, Tex.Civ. App., 380 S.W.2d 139, 141; 3A Corbin on Contracts, § 465; 86 A.L.R.2d 205; 44 A.L.R.2d 1125."

We consider the law in the present case to be that the agreement of the parties is that defendant would pay plaintiff an amount of money that defendant, in good faith, thought to be fair.

We have not been cited, and we have found no case directly in point as to the measure of damages applicable to the situation here. We have concluded the general rule must control. The Supreme Court, in Stewart v. Basey, 150 Tex. 666, 245 S.W.2d 484, 486 (1952), used these appropriate words:

"The universal rule for measuring damages for the breach of a contract is just compensation for the loss or damage actually sustained. By the operation of that rule a party generally should be awarded neither less nor more than his actual damages."

The text-writer in 22 Am.Jur.2d, Damages § 12, p. 28, states the general rule in this language:

"Compensation is the stated goal of courts in awarding damages for tortious injury or for breach of a contractual promise * * * With contracts, compensation is most often stated in terms of placing the plaintiff in the same financial position in which he would have been had the promise not been broken."

This language is found in McGuire v. Osage Oil Corporation, 55 S.W.2d 535, 536 (Tex.Com.App., 1932, holdings approved):

"It is undoubtedly the general rule of law in this country, and in England, that damages recoverable for the breach of a contract are those that may fairly and reasonably be considered as arising naturally, or according to the usual course of things from the breach of the contract itself, or such damages as may reasonably be supposed to have been in the contemplation of the parties to the contract at the time it was made, as the probable result of the breach thereof."

 The defendant, by failing to offer a fair price, arrived at in good faith (i. e. fair market value), is in no position to complain that the plaintiff has been compensated for the breach by an allowance of the fair cash market value of the property. The defendant cannot escape the payment of a fair price by simply declining to offer his own subjective evaluation of the property which he now owns. Plaintiff could not prove what the "fair price" might have been to the defendant for such was locked securely and irretrievably in defendant's own mind. Defendant, while a witness, had ample opportunity to testify as to what he considered to be a fair price, but failed or refused to give such testimony.

Here the defendant has been required to pay only the fair cash market value of the land which he received from the plaintiff.

He is in no position to complain, as indeed he does not complain, that he has been required to pay an excessive amount for the land. The point complaining of the jury's finding as to fair cash market value is, therefore, overruled.

Judgment affirmed.