Clarissa **CROCKER**, Individually and on behalf of the Estate of Glenn E. Crocker, Deceased, Petitioner,

v.

**WINTHROP LABORATORIES, DIVISION OF STERLING DRUG, INC.,** Respondent.

No. B–4440.

Supreme Court of Texas.

Oct. 2, 1974.

Rehearing Denied Oct. 30, 1974.

W. Page Keeton, Austin, Malcolm McGregor, El Paso, for petitioner.

Scott, Hulse, Marshall & Feuille, Schuyler B. Marshall, El Paso, Rodney, Dickason, Sloan, Akin & Robb, Jackson D. Akin, Albuquerque, N. M., for respondent.

REAVLEY, Justice.

Glenn E. Crocker became addicted to a new drug produced by Winthrop Laboratories and known as "talwin" which had been previously thought to be non-addictive. When he was in a weakened condition and his tolerance to drugs very low because of a period of detoxification, Crocker obtained an injection of a narcotic and died soon thereafter. His widow and representative, Clarissa Crocker, brought this action for damages due to his suffering while alive as well as for his wrongful death. She recovered judgment against Winthrop Laboratories in the trial court. The Court of Civil Appeals reversed and rendered judgment for the drug company, holding that while some of the facts found by the jury (including the positive misrepresenta-

tion by the drug company that talwin was non-addictive) would warrant the recovery, the additional finding that the drug company could not reasonably have foreseen Crocker's addiction (because of his unusual susceptibility and the state of medical knowledge when the drug was marketed), constituted a complete defense. 502 S.W. 2d 850. We hold that the latter finding does not bar the recovery, and we affirm the judgment of the trial court.

In July of 1967 Glenn Crocker suffered a double hernia, as well as frostbite of two fingers, while working as a carpenter in a cold storage vault. He was then 49 years old and was not a user of drugs or alcohol. His hernia was successfully repaired. The circulation of blood in his fingers, however, was not restored. Skin grafts were done on the fingers in October, but it was necessary to amputate part of his thumb in November and part of his middle finger the following January (1968). Prior to November 23, 1967, when Dr. Mario Palafox amputated part of his thumb, the several doctors who had treated him had prescribed both demerol (a narcotic) and talwin for relief of pain without observing any cause to believe him to be then addicted to any drug. Crocker told Dr. Palafox that he liked the relief he received from talwin, and Dr. Palafox responded that this was fortunate because talwin had no addicting side effect.

Crocker did develop an addiction to talwin, however, and was able to obtain prescriptions from several doctors as well as to cross the Mexican border to Juarez and acquire the same drug without a prescription under the name of "sosigon." He was hospitalized on June 3, 1968 by a psychiatrist, Dr. J. Edward Stern, for a process of detoxification (to remove the toxic agents in his body) and treatment of his drug dependency. After six days in the hospital being withdrawn from talwin as well as all narcotics, and at a time when his tolerance for potent drugs was very low, Crocker walked out of the hospital and went to his home. Because of his agitated condition

and the threats he made against his wife, he was finally successful in having her call Dr. Eugene Engel who, on June 10, 1968, came to the Crocker home and gave Mr. Crocker an injection of demerol. Crocker went to his bed for the last time.

Winthrop Laboratories first put talwin on the market in July of 1967 after extensive testing and approval by the Federal Drug Administration. The descriptive material on the new drug circulated by Winthrop Laboratories in 1967 gives no warning of the possibilities of addiction. There is a heading of a paragraph in the product information of the 1967 edition of Physicians' Desk Reference Book which reads: "Absence of addiction liability." This might be considered misleading, but in view of the evidence of verbal assurances as to the properties of talwin by the drug company's representative, there is no need to deal further with the printed materials. Dr. Palafox, a prominent orthopedic surgeon in El Paso, allowed Crocker to have liberal use of talwin and assured him that it was non-addictive because of the assurance by a representative of the drug company who had detailed the doctor on the nature of the drug. There had been an extended and specific conversation between the drug company representative and Dr. Palafox about talwin, and Dr. Palafox was told that talwin was as harmless as aspirin and could be given as long as desired. Dr. Palafox testified that the representative of the defendant insisted that talwin could have no addicting effect.

Subsequent experience has proved that talwin is an extremely useful drug for the relief of pain but that it cannot be regarded as non-addictive. Doctors Palafox and Stern had seen other patients dependent upon talwin. Dr. Arthur S. Keats, chairman of the Department of Anesthesiology at Baylor School of Medicine in Houston, who did original work on the drug and who testified during this trial on the call of the drug company, agreed with the attorney for Mrs. Crocker that "there are a tremendous number of people that do develop a talwin addiction."

Dr. Palafox was of the opinion that if he had not been assured of the non-addictive character of talwin, he could probably have avoided addiction or dependence by Crocker upon any drug.

Plaintiff's medical testimony depicted the addiction to talwin as a producing cause of the death of Crocker when taken together with the chain of events including the detoxification process and the injection of demerol.

The findings of the jury included the following:

1. That the defendant failed to advise the public during the year 1967 that its drug talwin could cause physical dependence.

2. That the failure of the defendant to advise the public that the drug talwin could cause physical dependence made such drug unreasonably dangerous as marketed in 1967. The jury was instructed that a drug in unreasonably dangerous "if under all the circumstances under which it is marketed, it subjected the Plaintiff to an unreasonable risk of harm even though the manufacturer did not know and could not know of the risk involved."

3. That the defendant drug company represented to the medical profession during the year 1967 that its drug talwin would not cause physical dependence.

4. That such representation was relied upon by Dr. Mario Palafox in prescribing talwin for the deceased.

5. That the deceased became physically dependent upon the drug talwin.

7. That the physical dependence of Crocker on the drug talwin was a producing cause of his death.

These findings, without more, would justify a recovery by the plaintiff under the rules of both sections 402A and 402B of the Restatement, Torts, Second. Section 402A has been applied by this Court in several cases: e.g., Technical Chemical Co.

v. Jacobs, 480 S.W.2d 602 (Tex.1972); McKisson v. Sales Affiliates, Inc., 416 S.W.2d 787 (Tex.1967); Shamrock Fuel & Oil Sales Co., Inc. v. Tunks, 416 S.W.2d 779 (Tex.1967).

■ Section 402B applies to those cases of misrepresentation by seller of chattels to the consumer; it reads:

One engaged in the business of selling chattels who, by advertising, labels, or otherwise, makes to the public a misrepresentation of a material fact concerning the character or quality of a chattel sold by him is subject to liability for physical harm to a consumer of the chattel caused by justifiable reliance upon the misrepresentation, even though

(a) it is not made fraudulently or negligently, and

(b) the consumer has not bought the chattel from or entered into any contractual relation with the seller.

The carefully written opinion of the Court of Civil Appeals has correctly foreseen that we would apply Section 402B of the Restatement and that the judgment for plaintiff should be affirmed depending upon the effect to be given the findings of the jury in response to special issues 9 and 10. Those findings were as follows:

9. That Crocker's addiction or dependency upon talwin was an abreaction. Abreaction was defined as "an unusual reaction resulting from a person's unusual susceptibility to the product or intended effect of the product in question; that is, such person's reaction is different in the presence of the drug in question from that in the usual person. An abreaction is one in which an unusual result is produced by a known or theoretical mechanism of action. An abreaction is one which could not have been reasonably foreseen in an appreciable class or number of potential users prior to the time Glenn E. Crocker became addicted or dependent on Talwin."

10. That at the time Crocker was taking talwin under doctors' prescriptions, the state of medical knowledge was such that Winthrop Laboratories could not have reasonably foreseen, in the exercise of ordinary care, that talwin would cause an addiction in an appreciable number of persons.

The Court of Civil Appeals held that there should be no liability on the part of the drug manufacturer because the harm to Glenn Crocker could not have been reasonably foreseen in an appreciable number of persons. Since the drug was not unreasonably dangerous to the ordinary user, the Court saw no basis for liability under the following Texas authorities: C. A. Hoover and Son v. O. M. Franklin Serum Company, 444 S.W.2d 596 (Tex.1969); Cudmore v. Richardson-Merrell, Inc., 398 S.W.2d 640 (Tex.Civ.App.1965, writ ref'd n.r.e.); Alberto-Culver Company v. Morgan, 444 S.W.2d 770 (Tex.Civ.App.1969, writ ref'd n.r.e.).

In *Hoover* the manufacturer of an unfit antibiotic injected into 25 calves was held liable for their injury or death. In the course of the opinion, this Court pointed to cases and writings asserting that if a drug or product is pure, or produced as designed, foreseeability of risk or harm to the idiosyncratic user may be a significant question determinative of product liability.

In *Cudmore* the plaintiff's case was lost before the jury, there being no finding of unfitness or danger of the drug. The court in its discussion stated this rule: "We believe and we hold that in such cases the manufacturer of a drug intended for human consumption or intimate bodily use should be held liable on the grounds of implied warranty for injurious results only when such results or some similar results ought reasonably to have been foreseen by a person of ordinary care in an appreciable number of persons in the light of the attending circumstances." 398 S.W.2d 644.

In *Morgan* the plaintiff suffered a blistered scalp after use of the defendant's hair dye. Apparently the trial court's judgment for plaintiff had been predicated on a finding that the failure to advise the plaintiff of the injuries that might have occurred to her if she was hypersensitive to the hair dye was *negligence* on the part of the manufacturer. The Court of Civil Appeals pointed out that it was undisputed that "only a very small minute number of potential users" of the dye would be injured by its use, and portrayed the rule of strict liability as applied in Texas to place upon the plaintiff a burden "to either negate any allergy or hypersensitivity or to show that she was part of an appreciable class or number of persons who would have been reasonably foreseen to have been harmed by the product, New Dawn." 444 S.W.2d 776. And, citing *Cudmore,* the court further wrote: "Appellant owed no duty to Mrs. Morgan to warn her of the dangerous effects of using New Dawn, because there is no evidence that she belonged to an appreciable class or number of potential users of New Dawn the manufacturer could reasonably have foreseen would have received injuries by the use thereof." 444 S.W.2d 777.

■■ The quoted statements from *Cudmore* and *Morgan* must be disapproved. The failure to warn of a danger cannot always be excused by the mere fact that the potentially endangered users are few in number. Furthermore, some products, though manufactured as designed and intended, are so dangerous in fact that the manufacturer should be liable for resulting harm though he did not and could not have known of the danger at the time of marketing.

■ The record in the present case shows that talwin is a good and useful drug which has no adverse side effects upon the great majority of people who use it but that it did harm Glenn Crocker because he was one of those people, perhaps not appreciable in number, who was susceptible to addiction or dependency upon the drug. Talwin is therefore a drug that cannot be made perfectly safe to all users,

but it can be made reasonably safe by being marketed with adequate warning. If the manufacturer knows or should know of potential harm to a user because of the nature of its product, the manufacturer must give an adequate warning.

In special issue 2. where the jury found talwin to have been unreasonably dangerous as marketed in 1967, the inquiry is specifically directed to the manufacturer's failure to warn that talwin could cause physical dependence. The positive misrepresentation of the drug's effects was not there included in the consideration of its dangerousness "as marketed." The judgment will not be upheld on this finding (special issue 2.), because we are not prepared to hold (as the instruction accompanying that issue would require) that in the case of a generally beneficial or good product the manufacturer's liability can be predicated upon the inadequacy of warning measured by those facts known at the time of the trial. See, generally: Basko v. Sterling Drug, Inc., 416 F.2d 417 (2nd Cir. 1969), Restatement, Torts, Second, § 402A, comment (k); Keeton: Products Liability—Drugs and Cosmetics, 25 Vand.L.Rev. 131 (1972); Keeton: Products Liability—Inadequacy of Information, 48 Tex.L.Rev. 398 (1970).

Liability of Winthrop Laboratories will be predicated upon the finding of misrepresentation that the drug would not cause physical dependence, a fact conceded by the attorney for the company in his jury argument, and upon the findings of reliance and causation. Whatever the danger and state of medical knowledge, and however rare the susceptibility of the user, when the drug company positively and specifically represents its product to be free and safe from all dangers of addiction, and when the treating physician relies upon that representation, the drug company is liable when the representation proves to be false and harm results. Restatement, Torts, Second, § 402B; see, Rogers v. Toni Home Permanent Co., 167 Ohio St. 244, 147 N.E.2d 612 (1958); Randy Knitwear,

Inc. v. American Cyanamid Co., 11 N.Y.2d 5, 226 N.Y.S.2d 363, 181 N.E.2d 399 (1962); Brown v. Globe Laboratories, 165 Neb. 138, 84 N.W.2d 151 (1957).

All points of error urged by Winthrop Laboratories in the Court of Civil Appeals have been examined and are found to give no ground for reversal of the trial court's judgment. The judgment of the Court of Civil Appeals is therefore reversed and the judgment of the trial court is affirmed.

WALKER, J., not sitting.