Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio



# MEMORANDUM OPINION

No. 04-08-00785-CV

**INCORE CONSTRUCTION, INC.** and Francisco Casias, Jr.,
Appellants

v.

**INCORE, INC.**,
Appellee

From the 150th Judicial District Court, Bexar County, Texas
Trial Court No. 2004-CI-08817
Honorable Janet Littlejohn, Judge Presiding

Opinion by:    Catherine Stone, Chief Justice

Sitting:       Catherine Stone, Chief Justice
               Karen Angelini, Justice
               Marialyn Barnard, Justice

Delivered and Filed: December 16, 2009

AFFIRMED

Incore Construction, Inc. and Frank Casias, Jr. appeal a judgment awarding damages to Incore, Inc. for breach of contract. The primary issues raised on appeal are a challenge to the trial court's interpretation of a Management Agreement and a complaint regarding jury charge error. We affirm the trial court's judgment.

**BACKGROUND**

John W. "Jack" Lopez owned Incore, Inc. ("Incore"), a construction business, for almost fifteen years. Frank Casias, Jr. was interested in buying the business from Lopez. Prior to buying the business, Casias began working for Incore in September of 1998, to gain a clear understanding of its operations.

Casias did not want to be responsible for certain potential liability that Incore had in relation to past projects. Accordingly, Casias formed a new construction company called Incore Construction, Inc. ("ICI"). In January of 1999, ICI, Casias, Incore, and Lopez signed a General Agreement of Indemnity with a bonding company to provide ICI performance and payment bonds.

Performance and payment bonds are an important asset in the construction industry. Bonds with higher aggregate limits enable a construction company to bid on larger construction projects. Part of the reason Incore had been so successful in the construction business was the high limits on its bonds; i.e. $30,000,000 per project with a $65,000,000 aggregate limit.

In April of 1999, the sale of Incore's business to ICI was documented with the following contracts: (1) a Management Agreement; (2) a Stock Pledge Agreement; (3) a Security Agreement; (4) a Promissory Note; and (5) an Equipment Lease Agreement. The Management Agreement set forth the following services and assistance that Incore agreed to provide to ICI and Casias:

(1)     Incore granted ICI a non-exclusive license to use the name "Incore;"

(2)     Incore agreed to take certain actions with regard to bonding to the extent Incore deemed it appropriate or necessary and desired to do so; and

(3)     Incore agreed to manage the strategic planning, administrative, data processing, accounting, record keeping, and back-office support departments of ICI.

In exchange for these services and assistance, ICI agreed to pay Incore the sum of $1,000,000, with payments as follows: (1) $100,000 on December 31, 2001; and (2) $300,000 on each of December 31, 2002, December 31, 2003, and December 31, 2004.

When it began doing business in 1999, ICI had the same bonding limits as Incore, i.e., $30,000,000 per project with a $65,000,000 aggregate limit. In 2000, that bonding was terminated and bonding was obtained through a new company, Great American Insurance Company ("GAIC"), with limits of $2,000,000 per project and a $5,000,000 aggregate limit. In order for ICI to secure this bonding, Lopez was required to sign a personal indemnity agreement.

In April of 2001, ICI, Casias, and Incore amended the payment arrangements under the Management Agreement. Under the amended terms, ICI was required to pay Incore $10,857.15 per month from June of 2002 through December of 2002, and $11,000 per month from January of 2003 until December of 2009. ICI began making the payments under the amended terms in June of 2002.

Although ICI had been in business for four years by January of 2003, its equity was decreasing, which caused GAIC to express concerns. In February of 2003, GAIC informed ICI it would not continue to provide bonds at the current limits unless ICI's working capital position was increased by $200,000 to a minimum of $275,000. In September of 2003, Lopez terminated his personal indemnity to GAIC with regard to ICI's bonding. As a result, GAIC refused to write ICI any more bonds.

In October of 2003, ICI failed to pay Incore the amount owed to it under the amended terms of the Management Agreement. Casias stated ICI's inability to pay was due to its inability to obtain bonds. In December of 2003, Casias's father formed a new construction company, and ICI sold its equipment and subcontracted its outstanding projects to the new company.

In June of 2004, Incore sued Casias and ICI for breach of the Management Agreement and for numerous other claims. Casias and ICI filed counter-claims and a third party claim against Lopez. The pleadings were later amended to add Casias's father and the new construction company as parties.

In June of 2007, the parties filed competing motions for summary judgment seeking, in part, to determine whether the language in the Management Agreement relating to the bonding services imposed a duty of good faith on Incore or, if not, whether the Management Agreement was illusory. The Honorable David Peeples initially signed an order imposing a duty of good faith with regard to the bonding services. All of the pending claims between the parties were severed except the parties' allegations regarding the breach of the Management Agreement. The case went to trial on that claim, but the trial court declared a mistrial when the jury could not reach a verdict.

After the first trial, Incore filed a motion asking Judge Peeples to reconsider his prior ruling. Judge Peeples reconsidered the competing motions for summary judgment and ruled that no duty of good faith existed with regard to the bonding services and the Management Agreement was not illusory. After a second trial based on Judge Peeples's new interpretation of the agreement, a jury found that ICI and Casias breached the Management Agreement, and the breach was not excused by a breach of the Management Agreement by Incore. The trial court signed a judgment awarding Incore $825,000, and ICI and Casias appeal the trial court's judgment.

## DISCUSSION

In their first issue, ICI and Casias assert the trial court erred in failing to interpret the Management Agreement to impose a duty of good faith on Incore in exercising its discretion to provide bonding assistance. Absent a duty of good faith, ICI and Casias contend Incore's promise

is illusory, making the Management Agreement unenforceable.  Finally, ICI and Casias liken the Management Agreement to a satisfaction contract and urge this court to hold that Incore's discretion must be exercised in good faith.

Incore responds that parties are free to contract and Texas courts are prohibited from amending the terms of a contract.  Incore also contends the Management Agreement does not limit its discretion with regard to bonding assistance and the absence of a duty of good faith does not make the Management Agreement illusory.  Incore further asserts that even if the Management Agreement was illusory, ICI and Casias could not rely on this for relief because they accepted performance under the Management Agreement.  Finally, Incore contends the Management Agreement is not a satisfaction contract.

After reconsidering the competing motions for summary judgment, the trial court concluded that there was no implied duty to act in good faith under paragraph 1.2 of the Management Agreement.  The standards for reviewing summary judgments are well settled.  *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985).  When cross-motions for summary judgment are filed, each party bears the burden of establishing that it is entitled to judgment as a matter of law. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000).  The appellate court should determine all questions presented when the trial court grants one motion and denies the other. *Id.*  The appellate court should render the judgment that the trial court should have rendered.  *Id*. at 356-57.

The section in the Management Agreement regarding bonding assistance provides:

1.2     <u>Bonding</u>.  During the Term of this Agreement, to the extent Incore deems it appropriate or necessary to [ICI's] business needs, and subject to [ICI] being acceptable to Incore's bonding company and further subject to Incore's desire

at such times to provide such bonding, (i) Incore shall join indemnity with [ICI] for the purpose of obtaining construction bonds, and (ii) Incore will provide to the bonding company guarantees or other assurances to the extent Incore deems it appropriate (collectively, "Bonding Support"). All fees, charges, guarantees, or other charges of any nature which are related to bonds issued on behalf of [ICI] shall be payable by [ICI]. Incore does not guarantee that the bonding company will agree to issue bonds for any particular construction project. Furthermore, no guaranty is given that Incore will provide Bonding Support for any period of time or for any particular project.

An illusory promise is a promise that fails to bind the promisor who retains the option of discontinuing performance. *Light v. Centel Cellular Co.*, 883 S.W.2d 642, 645 (Tex. 1994), *modified by*, *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 651 (Tex. 2006); *In re H.E. Butt Groc. Co.*, 17 S.W.3d 360, 370 (Tex. App.—Houston [14th Dist.] 2000, orig. proceeding); *O'Farrill Avila v. Gonzalez*, 974 S.W.2d 237, 244 (Tex. App.—San Antonio 1998, pet. denied). In this case, ICI and Casias argue that absent a duty of good faith, Incore's promise to provide Bonding Support is illusory. What ICI and Casias ignore, however, is that the provision regarding the Bonding Support is not a separate and divisible contract. *See Pace Corp. v. Jackson*, 284 S.W.2d 340, 344 (Tex. 1955). Instead, the Bonding Support provision is part of an integrated agreement in which Incore, Inc. promised to: (1) grant ICI a non-exclusive license to use its name; (2) provide bonding assistance at its discretion if it desires; and (3) perform other management services. What constitutes consideration is a question of law, and one consideration will support multiple promises by the other party. *Allen v. American Gen. Fin., Inc.*, 251 S.W.3d 676, 688 (Tex. App.—San Antonio 2007, pet. granted); *Birdwell v. Birdwell*, 819 S.W.2d 223, 228 (Tex. App.—Fort Worth 1992, writ denied); *Fortner v. Fannin Bank in Windom*, 634 S.W.2d 74, 77 (Tex. App.—Austin 1982, no writ). Each of Incore's promises provided consideration for the Management Agreement; therefore, the argument by ICI and Casias that the Management Agreement is illusory

absent the imposition of a duty of good faith with regard to the Bonding Support fails.

Moreover, even if this court were to hold that the promises were not mutual at the time of contracting, performance can render a contract enforceable. *See Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 849-50 (Tex. 2009) (agreement can become enforceable when a party performs an illusory promise); *Alex Sheshunoff Mgmt. Servs., L.P.*, 209 S.W.3d at 651 (performance of illusory promise renders contract enforceable); *In re H.E. Butt Groc. Co.*, 17 S.W.3d at 370 (contract formed by performance of illusory promise); *O'Farrill Avila*, 974 S.W.2d at 244 (even if promises are not mutual at the time of contracting, performance on the agreement renders the contracts enforceable). In this case, Incore provided Bonding Support for four years after the sales transaction closed. Therefore, Incore's performance would have rendered the Management Agreement enforceable even if it had been unenforceable when signed. *See O'Farrill Avila*, 974 S.W.2d at 244 (noting even a partial performance of a promise can render a contract valid and enforceable) (quoting *Hutchings v. Slemons*, 141 Tex. 448, 174 S.W.2d 487, 489 (1943)); *see also Belew v. Rector*, 202 S.W.3d 849, 855 (Tex. App.—Eastland 2006, no pet. ) (party accepting partial performance cannot raise lack of consideration as a defense); *Gaede v. SK Investments, Inc.*, 38 S.W.3d 753, 760-61 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (partial performance constitutes sufficient consideration to establish mutuality of obligation).

"As a rule, parties have the right to contract as they see fit as long as their agreement does not violate the law or public policy." *In re Prudential Ins. Co. of America*, 148 S.W.3d 124, 129 (Tex. 2004). Parties are bound by the terms of their agreement as written, and this court cannot rewrite the agreement to change its terms. *Alamo Community College Dist. v. Miller*, 274 S.W.3d 779, 785-86 (Tex. App.—San Antonio 2008, no pet.). Because the Management Agreement as

written was supported by adequate consideration, the agreement was not illusory, and the trial court did not err in refusing to imply a duty of good faith with regard to Incore's provision of Bonding Support. Alternatively, Incore's provision of Bonding Support rendered the Management Agreement enforceable, precluding ICI and Casias from claiming lack of consideration as a defense.

Finally, with regard to the argument regarding satisfaction contracts, under the terms of the contracts in the cases cited by ICI and Casias, the courts imposed a "good faith" requirement to provide consideration and prevent the contracts from being illusory. *See, e.g.*, *Black Lake Pipe Line Co. v. Union Const. Co., Inc.*, 538 S.W.2d 80, 88-89 (Tex. 1976), *overruled on other grounds, Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex. 1989); *Young v. Neatherlin*, 102 S.W.3d 415, 420 (Tex. App.—Houston [14th Dist.] 2003, no pet.); *Zep Mfg. Co. v. Harthcock*, 824 S.W.2d 654, 659 (Tex. App.—Dallas 1992, no pet.); *Young v. Warren*, 444 S.W.2d 777, 780 (Tex. Civ. App.—Beaumont 1969, writ ref'd n.r.e.). Because we hold that the Management Agreement is supported by adequate consideration, this court need not construe the Bonding Support provision in the Management Agreement as a satisfaction contract in order to make the agreement enforceable.

## JURY CHARGE

In their second issue, ICI and Casias assert that their affirmative claim against Incore for breach of the Management Agreement was severed before the formal charge conference. Alternatively, ICI and Casias assert that the trial court erred in failing to submit their affirmative claim against Incore for breach of the Management Agreement in the jury charge.

During oral argument, counsel for Incore argued that any decision by this court with regard to whether ICI and Casias's claim was severed would be advisory because the issue is not ripe for our consideration. The central concern of the ripeness doctrine is "whether the case involves

uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all." *Perry v. Del Rio*, 66 S.W.3d 239, 249-50 (Tex. 2001). In assessing ripeness, we must "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id*. at 250 (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)).

In this case, this court is required to resolve whether ICI and Casias's counterclaim for breach of the management agreement was severed in order to resolve the second issue being raised in this appeal. If the claim was severed, ICI and Casias concede that the jury charge contained no error. If the claim was not severed, this court would need to address whether the jury charge contained error to resolve the second issue. Moreover, withholding our consideration of the issue would result in a hardship to the parties since they would be left uncertain as to what claims remained to be resolved in future proceedings. Accordingly, we reject Incore's argument that the issue of severance is not ripe for our consideration.

Before trial, ICI and Casias filed a motion to sever. The motion initially noted that the underlying cause was principally a dispute over the non-performance of the Management Agreement. The motion later asserted, "The heart of the dispute relates to the Management Agreement. The issue of who materially breached the Management Agreement should be tried first and then a second trial"would "be pared down and much reduced." ICI and Casias then requested the trial court "to sever all of the claims that do not relate to who materially breached the Management Agreement."

The order granting the motion to sever, which was signed by the Honorable Michael Peden, stated that the following claims were severed:

> (xviii) ICI and Frank Casias'[s] claims for breach of contract against Jack Lopez, Incore, Inc., and Sonterra Office Park, L.P., as stated in Paragraphs 54 through 64 of the Answer; however, with respect to the claim for breach of

the Management Agreement as to damages and attorney's fees only, with respect to all other claims for breach of contract as to the entirety of each claim including damages and attorney's fees.

At the beginning of the formal charge conference, the following exchange occurred with regard to the severance:

MR. POWELL: Judge, before we do Question No. 1, could we ask for your ruling on the record?
    The parties have agreed to sever for the separate action Incore Construction's and Frank Casias's breach of the management agreement claim as against Incore, Inc. Could we ask for a ruling on that?

THE COURT [Judge Littlejohn]: Right. In clarification of the order entered by Judge Peden on April the 2nd, 2008, as it relates to the motion to sever out or the agreed order to sever out, item sub paragraph No. 18 is clarified and the Court grants the severance of Incore Construction and Frank Casias's claims against Incore, Inc.

MR. POWELL: Thank you, Your Honor.

THE COURT: Somebody needs to bring me an order on that, too.

MR. POWELL: We'll bring you a written order. With that said, we have no objections on the Defendant's part to Question No.1.

After the jury returned its verdict, the issue of the severance was revisited at a hearing on a motion to enter judgment:

MR. POWELL: And to recall the Court's attention, this was agreed to. We really should just be at the point of signing it because on the record this exact severance was agreed to by Mr. Regan and us. And it was the precursor to the jury charge. And as the Court pointed out to us and then mentioned again today, we didn't have a breach of contract affirmative claim in this jury charge. We had an issue of: Was our performance excused due to an affirmative defense? And as the Court pointed out, affirmative claims and affirmative defenses are different portions of the Pattern Jury Charge, different language, different standards.
    And so to facilitate our jury charge, Mr. Regan and I both agreed to exactly the severance that I have got in this agreed order, which the judge then granted, based on our agreement. So basically what he's doing now is pulling back his agreement, which was already granted on the record.
    So we feel –

****

> MR. POWELL: The early paragraphs [of paragraphs 54 through 64 of the jury charge], Judge, are breach of the management agreement claims that we're asking to be severed. And we have submitted to the Court a proposed jury charge with our breach of contract as an affirmative claim. And based on our agreement to sever it, it was removed and we didn't have any objection to the jury charge. So if he were allowed to go back and undue [sic] his agreement to the severance, we would have objected that the Court didn't submit our affirmative breach of contract claim, which is what we submitted to the Court. But, again, our failure to object was based on the Court's granting the severance. And then you asked us to put it in writing, and all we did was put it in writing exactly what the Court granted.

Although the trial court stated that it thought the claim was severed out, the trial court subsequently declined to sign a clarification order on the basis that such a ruling would be an advisory opinion regarding the claims to be tried at the subsequent trial of the severed claims. The trial court concluded that the judge presiding over the subsequent trial would need to decide what claims remained pending.

Although we agree that the liability portion of ICI and Casias's breach of Management Agreement claim was expressly excluded from the severed claims in Judge Peden's order, Incore argues that ICI and Casias waived their ability to rely on the trial court's ruling clarifying the severance at the formal charge conference because: (1) the trial court did not sign a written clarification order; or (2) ICI and Casias waived their right to complain about the trial court's refusal to sign a clarification order by accepting the ruling that the judge presiding over the subsequent trial would need to determine which claims remained to be tried. We disagree with Incore's argument because the statements at the formal charge conference rose to the level of a Rule 11 agreement based on Incore's failure to object when the attorney for ICI and Casias stated that the parties agreed

to sever the claim. Moreover, ICI and Casias did not accept the trial court's ruling; they simply were unable to convince the trial court to sign the written clarification order.

Rule 11 permits an agreement to be enforced if it is made in open court and entered of record. TEX. R. CIV. P. 11. When the attorney for ICI and Casias stated, "The parties have agreed to sever for the separate action Incore Construction's and Frank Casias's breach of the management agreement claim as against Incore, Inc.," his statement constituted evidence that an agreement existed. *Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997). The trial court then stated it was granting the agreed order to sever, and the entire claim by ICI and Casias for breach of the Management Agreement was severed from the underlying clause. Since the parties' agreement is enforceable under Rule 11, neither the trial court's refusal to subsequently sign a written clarification order nor the inability of ICI and Casias to convince the trial court to sign the written clarification order resulted in a waiver. Although the severance may not make logical sense, the parties are bound by their agreement. Because we conclude ICI and Casias's claim against Incore for breach of the Management Agreement was severed, we need not address the alternative contention that the jury charge contained error with regard to that claim.

## CONCLUSION

The trial court properly interpreted the Management Agreement as not containing a duty of good faith with regard to the Bonding Support. The statements made at the formal charge conference gave rise to a Rule 11 agreement with regard to the severance of ICI's and Casias's counterclaim against Incore for breach of the management agreement. The trial court's judgment is affirmed.

Catherine Stone, Chief Justice