**REVLON, INC., Appellant,**

v.

**Glenn N. HAMPTON, Appellee.**

No. 7933.

Court of Civil Appeals of Texas.

April 28, 1977.

Rehearing Denied May 19, 1977.

Richard L. Josephson, Houston, for appellant.

Larry J. Doherty, Houston, for appellee.

DIES, Chief Justice.

Defendant below, Revlon, Inc., appeals from the granting of a judgment in the sum of $5,140 in favor of plaintiff below, Glenn Hampton. Plaintiff sought and recovered damages for personal injuries alleged to have been sustained from the use of a hair dye "Color Up" manufactured by defendant. The parties will be referred to as they were below.

Plaintiff applied the "Color Up" to his scalp in the spring of 1970. He testified that before application he followed precisely the directions given by defendant known as "patch test", the purpose being to determine any allergic reaction a customer might have to the product. Plaintiff said the test on him was negative.

The "Color Up" dye caused immediate burning to plaintiff's scalp, bleeding the

following day, and permanent loss of part of his hair, plaintiff contended.

At trial, plaintiff contended his injuries were attributable to the presence of thallium in the dye. This substance is known to cause loss of hair. However, the jury failed to find that the dye contained thallium. They (the jury) did however find that the dye was defective and that this was a producing cause of plaintiff's injuries, which defendant contends is supported by no evidence. We agree.

*Section 402 A of Restatement (Second) of Torts (1965)* provides:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

"(a) the seller is engaged in the business of selling such a product, and

"(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in subsection (1) applies although

"(a) the seller has exercised all possible care in the preparation and sale of his product, and

"(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

*McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787, 789 (Tex.1967) held this section of the *Restatement* applicable in Texas to defective products which cause physical harm to persons.

While plaintiff's expert testified that any hair coloring that would produce hair loss was defective, on cross examination she admitted this conclusion was based on the assumption the dye contained thallium.

In *Gravis v. Parke-Davis & Co.*, 502 S.W.2d 863, 868–869 (Tex.Civ.App.—Corpus Christi 1973, writ ref'd n. r. e.), the plaintiff was given a spinal anesthetic. Thereafter she suffered from a number of physical disabilities including bladder trouble requiring a catheter continuously, phlebitis of the left leg, high blood pressure, and other problems of the lower extremities. A diagnostician concluded that her condition was related somehow to the spinal anesthetic. The trial court granted an instructed verdict against her. In affirming the judgment, the court said:

"There is no evidence that the drugs were impure or defective. . . . The plaintiffs . . . did not rule out all of the other possible causes of the injury which could establish circumstantially at least, that the defective drug was the only cause. . . . The fact that the plaintiff was injured does not create liability." [Citing *Alberto-Culver Company v. Morgan*, 444 S.W.2d 770, 776 (Tex.Civ.App.— Beaumont 1969, writ ref'd n. r. e.), disapproved on other grounds, *Crocker v. Winthrop Laboratories, Div. of Sterling Drug, Inc.*, 514 S.W.2d 429, 432 (Tex.1974)].

See also *Royal Crown Bottling Company v. Ward*, 520 S.W.2d 797, 801 (Tex.Civ.App.— Beaumont 1975, no writ) [Citing *Procter & Gamble Manufacturing Co. v. Langley*, 422 S.W.2d 773, 778 (Tex.Civ.App.—Dallas 1967, writ dism'd)]:

" 'As a general rule the fact that injury follows the use of the product is not of itself alone a basis for a finding of proximate cause.' "

Cases may arise where the circumstantial evidence may be such that it can properly be inferred that the accident was caused by a defect in the product. See *Lindroth v. Walgreen Co.*, 407 Ill. 121, 94 N.E.2d 847, 852 (1950), cited in *1 L. Frumer & M. Friedman, Products Liability, §§ 1101[2], 1101[3] (1976)*. After a vaporizer was put into operation, it melted causing a fire; therefore "it would seem inescapable that if the vaporizer did . . . melt by the application of its own heat, it was defective." *1 Frumer & Friedman, supra, § 11.01[3] p. 213.*

But the case we review is not such a case. Plaintiff's theory that the hair dye contained thallium was rejected by the jury. His expert witness really gave no factual

testimony of a defect in the product or explained what defect caused plaintiff's hair loss. See *1 Frumer & Friedman, supra, § 12.02[1], Expert Evidence.* In general p. 254.43 and *12.02[2] Causation in Fact*, p. 254.72, and many authorities cited.

In *1 R. Hursh & H. Bailey, American Law of Products Liability 2d, § 1.7, p. 16 (1974)* we find:

"In any products liability case, the plaintiff has to show that he was injured or damaged by the product in question. This is usually something more than merely showing that he used the product and that he simultaneously or subsequently suffered some injury or damage. The plaintiff also has to show that the product was defective in some manner and that the defect caused the injury.

"That a manufacturer or seller cannot be held liable for injury allegedly caused by a product in the absence of proof that the product in question was dangerous in some way—that, in short, it was capable of causing the injury—would appear too clear to require exhaustive citation of supporting authority. None of the vast number of cases on the subject of products liability has ever expressed or intimated anything in any way out of harmony with the above principle, and it seems safe to say that none ever will."

In the language of Dean Keeton:

"The method employed to date [of establishing liability] is the requirement that there must have been a defect in the product as it left the hands of the manufacturer. This requirement remains the principal obstacle to a recovery."

P. Keeton, "Products Liability—Liability Without Fault", *41 Texas L.Rev. 855, 858 (1963).* And, so it is here—plaintiff has failed to overcome "the principal obstacle" to his recovery.

The dissent does not address directly the evidence supporting a finding that the product was defective. Instead, the quoted

testimony (an assumption predicated upon a hypothetical conclusion) may have established cause in fact; it did not establish any specific defect in the product.

Appellant's point of error is sustained. It is ordered, adjudged and decreed that Glenn Hampton recover nothing of Revlon, Inc. All costs are taxed against appellee.

REVERSED and RENDERED.

KEITH, Justice, concurring.

The dissent has now taken the ultimate step in product liability cases. If followed, the manufacturer is now an insurer and no longer must a plaintiff establish that a product was defective when it left the manufacturer's hands. The only authority for such a far-reaching change in the law are two food poisoning cases from this court, one of which is an unreported case.[1]

This unprecedented step is taken in a case where, to use the language of our Supreme Court in *Seideneck v. Cal Bayreuther Associates*, 451 S.W.2d 752, 755 (Tex.1970), there is no more than "a glimmer of evidence to support the plaintiffs' position." If a manufacturer's position has been changed into that of an insurer, and the plaintiff is no longer required to prove (either directly or circumstantially) a defect in the product, such a holding should come from our Supreme Court and not from an intermediate court.

Under the fact structure of this case, I concur in the reversal of the judgment and the rendition of the cause.

STEPHENSON, Justice.

I respectfully dissent. I would affirm the judgment of the trial court.

It is true plaintiff alleged specifically that this product was defective because it contained thallium. However, there is also a general allegation that the product in question was in such a defective condition as to subject plaintiff to an unreasonable

---

1. It is generally accepted throughout the nation that an unreported case has neither binding nor persuasive effect and that any citation of such decisions should be precluded. See *R. Leflar,*

*Appellate Judicial Opinions, 309, 313 (West Publishing Co., 1974),* and page 319 where the reasons are set out.

risk of harm, and, as such, the product was unfit for its intended use.

Plaintiff's pleadings also contained the allegations that he purchased the product and used it in accordance with the directions; that he gave himself the patch test before using; that before such use he had a full head of hair; and that it was characteristic of his family to keep a full head of hair.

It must be remembered that the point of error sustained by the majority opinion is that there is no evidence to support the jury finding that this hair coloring was defective at the time it was sold to him. In passing upon such a point, this court can consider only the favorable evidence to such finding.

It is stipulated that defendant packaged, bottled, and prepared the product in question, and, in effect, that there was no substantial change in its condition when sold to plaintiff. Defendant's answer to an interrogatory shows the manufacturing of this product was discontinued during the year 1969.

Plaintiff testified to the following: He bought this product in March 1970. He read the instructions with the product and followed them. He gave himself the patch test as directed. Then he applied this product and noticed a burning sensation immediately. The burning sensation continued until he rinsed the product off. In two or three days his scalp began to bleed and large clumps of hair started falling out; that he did not use anything else that could have caused the bleeding and loss of hair. When his hair did not grow back he went to see a doctor. He has continued to experience hair loss. He had a full head of hair before this incident. His father is still alive and has a full head of hair. There are no baldness traits for the males in his family.

Dr. Ida Walton testified to the following: She is a dermatologist by profession, and a licensed medical doctor; that plaintiff suffered from alopecia areata, which resulted in his hair loss. His problem was a postinflammation alopecia, with destruction and atrophy of the underlying hair follicles, resulting from the intense dermatitis and subsequent infection which followed the use of the hair dye; that her diagnosis was based upon the most reasonable medical probability in determining the cause of the condition. She ruled out the probability of a spontaneous loss of hair.

In answer to the following hypothetical question, Dr. Walton gave this answer:

"QUESTION: Assume with us, then, that the only inflammatory agent that was applied to his head, during this period of time, was the Color Up in question; assume with us, also, that the history that I will give to the judge and jury will reflect that he experienced an immediate onset of irritation and difficulty in that area. Would you, within a reasonable medical probability, conclude, then, that the application of this substance was the source of his hair irritation?

"ANSWER: Well, I would have to assume that it was.

"QUESTION: Based on those assumptions?

"ANSWER: Based on those assumptions."

I am well aware of the general rule stated in the majority opinion that the fact that injury follows the use of the product is not of itself alone a basis for a finding of proximate cause. It is also a general rule for which citation is unnecessary, and that is that producing cause can be proved by circumstantial evidence. In my opinion the circumstantial evidence that the product was defective is overwhelming. The favorable evidence shows plaintiff used the product as directed and suffered his injuries. The favorable evidence ruled out all of the other possible causes of these injuries.

In my opinion the evidence is as strong, if not stronger, than the evidence in both *Herfy's Corporation v. Marilyn Collins*, Docket No. 7905 (Tex.Civ.App.—Beaumont, January 13, 1977) (unreported), and *Hebert v. Loveless*, 474 S.W.2d 732 (Tex.Civ.App.—Beaumont 1971, writ ref'd n. r. e.). Those opinions came out of this court, and in neither case was there any evidence as to

what was wrong with the food eaten by the plaintiffs. The plaintiffs ate food and suffered injuries; and the defect in the food was thereby established by circumstantial evidence. I would apply the same rule to the case before us.

In a concurring opinion it is stated that to adopt a rule as set forth in this dissent would make the manufacturer an insurer. Although that might not be a bad rule and the next step in products liability law, I am not prepared to go that far. I suggest only that the defectiveness of a product may be proven by circumstantial evidence as established in each case. This is not a new statement of law in products liability cases. Even a casual reading of a well written opinion by Justice Keith in *Hebert v. Loveless, supra,* shows this matter is discussed at length. The author of that opinion cites *Pittsburg Coca-Cola Bottling Works v. Ponder,* 443 S.W.2d 546 (Tex.1969), and *Darryl v. Ford Motor Company,* 440 S.W.2d 630 (Tex.1969), neither of which is a food case. Justice Keith quotes from *Darryl* as follows:

" 'To exclude circumstantial evidence that the product was defective at the time of the sale would frustrate the beneficial purposes of the doctrine. It would be equally difficult, if not impossible, for the plaintiff to rebut by direct evidence all of the conceivable possibilities which would account for the defective condition other than the existence of the defect at the time of the sale. *Such direct evidence should not be required, particularly when dealing with a latent defect.'* "