**Kyle ALLEN, Appellant/Cross–Appellee,**

v.

**AMERICAN GENERAL FINANCE, INC., Appellee/Cross–Appellant.**

No. 04–06–00273–CV.

Court of Appeals of Texas,
San Antonio.

Nov. 28, 2007.

Rehearing Overruled Dec. 21, 2008.

---

E.B. Barretto, Steven A. Sinkin, Law Offices of Sinkin & Barretto, P.L.L.C., Thomas H. Crofts, Jr., Crofts & Callaway, P.C., Carleton B. Spears, Law Office of Carleton B. Spears, San Antonio, TX, for Appellant.

Richard C. Danysh, Christopher C. Rulon, Bracewell & Giuliani, L.L.P., San Antonio, TX, for Appellee.

Sitting: KAREN ANGELINI, Justice, SANDEE BRYAN MARION, Justice and STEVEN C. HILBIG, Justice.

## OPINION

Opinion by STEVEN C. HILBIG, Justice.

Both parties appeal the judgment in this suit that arose from Kyle Allen's efforts to avoid foreclosure of a property tax lien. We overrule both parties' challenges to the judgment on Allen's breach of contract claim and sustain in part Allen's challenge to the summary judgment on his claims under the Texas Deceptive Trade Practices Act. We reverse the judgment and remand the cause to the trial court for further proceedings on Allen's DTPA claims and for Allen to elect his remedy, if necessary.

### FACTUAL AND PROCEDURAL BACKGROUND

In the early 1990s, Allen's father deeded him the family home on Nashville Drive in San Antonio, Texas. The deed listed Allen's mailing address as 315 Cypress Gardens Drive, San Antonio, Texas; however, Allen actually lived in Oregon. Allen's father lived at the Cypress Gardens Drive address and one of Allen's brothers lived at the home on Nashville Drive. Allen never instructed either his father or brother to forward mail that was addressed to him at either property.

Allen failed to pay taxes on the Nashville Drive property and, in September 1996, Bexar County, the City of San Antonio, and the Northside Independent School District filed suit against him for delinquent taxes totaling $6,321.68. The Bexar County Sheriff's Department attempted several times to serve Allen with citation at the Cypress Gardens Drive address but no one ever answered the door. On February 14, 1998, the petition was served on Allen by attaching a copy of the citation to the front door of the house on Cypress Gardens Drive.

When Allen learned about the tax suit from one of his brothers in March 1998, he flew to San Antonio, obtained an extension of time to pay the taxes, but did not answer the lawsuit. Because he did not have money to pay the taxes, Allen went to an AGF branch office where he spoke to Mark Esquivel, an AGF management trainee. Allen gave Esquivel the tax suit documents and told Esquivel he "needed to pay the tax suits." According to Allen, Esquivel suggested the taxes could be paid from a home equity loan; however the minimum loan amount was $15,000.00. Allen testified Esquivel said that AGF paid people's delinquent taxes "all the time," and that AGF "would pay the tax suit." Allen testified he felt confident the delinquent taxes would be paid by AGF. Esquivel, who was a district manager for AGF at the time of trial, testified AGF often makes loans for the purpose of paying delinquent taxes. In those situations, as part of the loan transaction, AGF obtains a tax certificate showing the amounts due before the loan closes, and AGF pays the taxes out of the loan proceeds immediately after closing by hand-delivering the payment to the tax office or, if there is a suit, by hand-delivering the payment to the law office handling the suit. Esquivel testified that performing these services was part of AGF's agreement with Allen. He testified that part of the agreement was "[t]o pay the taxes and handle the suit." The loan file, which was entered

into evidence, includes a tax certificate obtained by AGF before closing and information about the tax suit.

Allen's home equity loan in the amount of $15,000.00 closed on May 18, 1998. The closing documents reflect that $4,988.29 of the loan proceeds were to be allotted to Bexar County for payment of back taxes and that the rest, $10,011.72, was paid directly to Allen. However, as reflected in the tax suit documents, Allen's total tax liability was over $6,000.00. AGF issued a check in the amount of $4,988.28 payable to the Bexar County Tax Assessor on May 22, 1998, but the check was not processed by the Tax Assessor's office until July 2, 1998. No explanation of the underpayment or the delay in processing appears in the record. AGF never contacted the law firm representing the taxing authorities to confirm all the taxes had been paid or to obtain a dismissal of the tax suit.

Allen testified that before he returned to Oregon, he and his brothers agreed to share the loan obligation equally. According to Allen, each brother was to send his share of the payment to the youngest brother each month, who would in turn make the payment to AGF. Although the money was sent as planned, the youngest brother never made a payment to AGF. Rather, he used the money for his own purposes while telling his brothers he was making the payments.

Because AGF did not pay the entire tax delinquency, the taxing authorities proceeded with the suit and obtained a default judgment on July 29, 1998, that ordered foreclosure of the Nashville Drive property. Counsel for the taxing authorities did not conduct another search of the real property records and therefore was unaware of AGF's lien on the property. Allen did not receive the notice of the judgment sent to him at the Cypress Gardens Drive address. Similarly, he did not receive (1) the request for order of sale filed

by the taxing entities, (2) the order of sale, (3) the notice of sale, or (4) the sheriff's return showing the property was sold November 3, 1998. Nevertheless, before the foreclosure sale, one of Allen's brothers told him that "people were coming around looking at the house and asking questions" and that a gentleman, Daniel Goff, came to the house and left a business card. After acquiring this information, Allen waited a week or more before he contacted Goff on November 4, 1998. Goff told him that he had purchased the Nashville Drive property on November 3, 1998.

Seven days after the foreclosure sale, Allen filed a motion in the tax suit to redeem the excess proceeds. On November 18, 1998, the trial court awarded Allen $29,993.66, representing the difference between the proceeds obtained from the foreclosure sale and the amount due for delinquent taxes.

During the summer and fall of 1998, AGF tried repeatedly to contact Allen because the home equity loan payments had not been made and the homeowner's insurance policy on the property had lapsed. On November 19, 1998, unaware of the tax foreclosure sale, AGF sent Allen a notice of default stating its intent to foreclose on the property if all past due monies were not paid by December 21, 1998. The notice was sent to the Nashville Drive address but, as with all other correspondence in this case, it was never forwarded to Allen.

In January 1999, AGF filed this suit seeking foreclosure. Allen answered and ultimately filed several counterclaims. It was only after filing suit and obtaining Allen's answer that AGF learned the property had already been sold. AGF abandoned its foreclosure claim and sought imposition of a constructive trust on the redemption proceeds. AGF moved for and obtained a partial summary judg-

ment dismissing Allen's DTPA and gross negligence claims. Allen's breach of contract and negligence claims were tried to a jury, which found:

1. AGF and Allen agreed AGF "would pay all amounts due and owing in the tax lawsuit out of the loan";

2. AGF failed to comply with the agreement to pay all amounts due and owing and this failure was not excused by Allen's failure to comply with a material term of the loan;

3. AGF's negligence, and not Allen's, proximately caused the foreclosure sale;

4. the fair market value of the Nashville Drive property was $54,500;

5. AGF charged interest in excess of 18%; and

6. Allen's reasonable attorney's fees for preparation and trial was $150,000; for appeal to the court of appeals is $20,000; and for "appeal to the Supreme Court of Texas" is $20,000.

After the trial court suggested a remittitur, Allen remitted $100,000 in attorney's fees. Allen elected to recover on his breach of contract claim and the final judgment awarded Allen $24,506.23, representing the market value of the property as found by the jury less the redemption proceeds previously recovered by Allen, prejudgment interest, postjudgment interest, a $2,000.00 statutory usury penalty, $50,000 attorney's fees for trial, and appellate attorney's fees as found by the jury.

Both Allen and AGF filed notices of appeal. We address the appellate issues raised by each party separately, beginning with those raised by AGF.

## AGF's Appeal

AGF raises six issues: (1) the trial court erred in refusing to submit a breach of contract damages question and mitigation instruction; (2) the breach of contract claim fails as a matter of law because the alleged agreement was not sufficiently definite and not supported by consideration; (3) the evidence established AGF's defense of excused performance as a matter of law; (4) the trial court erred in submitting a negligence question; (5) Allen's usury claim fails as a matter of law because a usurious rate of interest was never communicated to Allen; and (6) the trial court erred in excluding evidence.

### The Jury Charge on Breach of Contract Damages and Mitigation

AGF first complains the trial court abused its discretion in failing to submit a question to the jury that causally linked AGF's breach of contract to Allen's damages and in failing to instruct the jury on Allen's duty to mitigate damages.[1]

#### Applicable Law and Standard of Review

The trial court must submit those questions raised by the pleadings and evidence that are necessary for the jury to return a proper verdict. Tex.R. Civ. P. 277, 278; *Villegas v. Tex. Dep't of Transp.*, 120 S.W.3d 26, 37 (Tex.App.-San Antonio 2003, pet. denied). When an element of a theory of recovery is omitted

---

1. Allen points out that AGF phrases its issue as a complaint that the trial court erred in failing to submit a "damage" question. Though AGF did phrase its issue in this way, it is clear from its objection to the charge, its proposed question and instruction, and its argument on appeal that AGF's actual complaint is the absence of a question asking the jury to determine the damages caused by the breach of contract and an accompanying mitigation instruction. We will not reject an appellate issue because the issue is inartfully phrased. *See Pool v. Ford Motor Co.*, 715 S.W.2d 629, 632–633 (Tex.1986) ("We look not only at the wording of the points of error, but to the argument under each point to determine as best we can the intent of the party.").

from the charge and the party without the burden of proof objects to its absence, we may affirm only if the element was established as a matter of law. *Dittberner v. Bell,* 558 S.W.2d 527, 533–34 (Tex.Civ. App.-Amarillo 1977, writ ref'd n.r.e.). A jury instruction should be submitted if it is raised by the pleadings and the evidence, is reasonably necessary to enable the jury to render a proper verdict, and is requested in substantially correct form. TEX.R. CIV. P. 278; *Hygeia Dairy Co. v. Gonzalez,* 994 S.W.2d 220, 224 (Tex.App.-San Antonio 1999, no pet.). We review the failure to submit a requested instruction for abuse of discretion. *Shupe v. Lingafelter,* 192 S.W.3d 577, 579 (Tex.2006). We may reverse for charge error only if the error probably caused the rendition of an improper judgment or prevented the appellant from properly presenting his case to the court of appeals. TEX.R.APP. P. 44.1(a); *Union Pac. R.R. Co. v. Williams,* 85 S.W.3d 162, 170 (Tex.2002). In deciding whether the error is reversible, we consider the pleadings, the evidence, and the charge in its entirety. *Villegas,* 120 S.W.3d at 39.

### Omitted Causation Element

 To recover damages for breach of contract a plaintiff must establish he suffered a pecuniary loss as a result of the breach. *Abraxas Petroleum Corp. v. Hornburg,* 20 S.W.3d 741, 758 (Tex.App.-El Paso 2000, no pet.). A loss "results from" a breach of contract when the loss is a natural, probable, and foreseeable consequence of the defendant's conduct. *Mead v. Johnson Group, Inc.,* 615 S.W.2d 685, 687 (Tex.1981); *Abraxas,* 20 S.W.3d at 758. Here, the trial court determined that if the jury found AGF breached the agreement to pay all amounts due in the tax suit, the measure of damages would be the fair market value of the property, and the court agreed with Allen that no causation issue was necessary. Thus the charge

omitted the causation element of Allen's theory of recovery. AGF did not complain in the trial court, nor does it argue on appeal, that the market value of the Nashville Drive property is not the proper measure of damages. Rather, AGF objected to the charge on the ground that the court did not submit a question that causally linked AGF's breach of contract to the loss of the property. AGF argues the evidence raised a factual dispute about whether Allen's loss of the property was a natural, probable, and foreseeable consequence of its breach of contract and that the trial court's omission of that element from the charge was therefore error.

Both AGF's representatives and the attorney representing the taxing authorities in the tax suit testified that the taxing authorities would not have obtained a judgment and foreclosed on the property had AGF paid the amounts due when the loan closed. AGF does not seriously dispute that foreclosure of the property was a natural, probable, and foreseeable result of its failure to pay the amounts due in the tax suit. Rather, AGF argues the jury could have found that its breach did not cause the loss because Allen's failure to pay the home equity loan would have resulted in his losing the property to foreclosure even if AGF had paid the taxes.

 It is beyond dispute that Allen's failure to make payments on the home equity loan did not cause the foreclosure of the property. AGF's contention that, had the taxes been paid and the tax suit been dismissed, it would have been able to successfully foreclose on the property is entirely speculative. Evidence that is merely speculative is insufficient to create a fact issue on causation. *See Arredondo v. Rodriguez,* 198 S.W.3d 236, 240 (Tex.App.-San Antonio 2006, no pet.) Because the evidence conclusively established that Allen's loss was a natural, probable, and foresee-

able result of AGF's breach of its promise to pay the amounts due in the tax suit, no issue on causation was required. *See Winograd v. Clear Lake City Water Auth.*, 811 S.W.2d 147, 156 (Tex.App.-Houston [1st Dist.] writ denied).

## Mitigation

■■■ AGF also argues the trial court erred in refusing to instruct the jury to consider whether Allen could have mitigated his damages by acting as a reasonable person in conducting his affairs. The mitigation-of-damages doctrine is an affirmative defense that requires an injured party, following a breach, to exercise reasonable care to minimize his damages if it can be done with slight expense and reasonable effort. *Great Am. Ins. Co. v. N. Austin Mun. Util. Dist. No. 1*, 908 S.W.2d 415, 426 (Tex.1995). Generally, when failure to mitigate has been properly pled and is raised by the evidence, the jury should receive an instruction on mitigation of damages. *See Hygeia Dairy*, 994 S.W.2d at 224.

■■■ AGF specifically pled the affirmative defense of failure to mitigate and developed evidence that Allen could have avoided the foreclosure had he acted as a reasonably prudent person. There was evidence the tax suit was partially the result of Allen not receiving mail regarding the tax delinquency. Nevertheless, after learning of the tax suit, Allen did not give the taxing authorities or their attorney his correct mailing address and did not arrange to have his mail forwarded. AGF contends a reasonably prudent person would have taken such action. Had he done so, Allen would have received timely notice of the default judgment in July 1998, and would have contacted AGF. In that event, Allen and AGF would have had the opportunity to take action to protect the property and prevent the foreclosure. We conclude this evidence was sufficient to raise a question on the issue of Allen's failure to mitigate.

■■■ Allen argues that any failure to submit an instruction on mitigation in conjunction with a damages question was not reversible error because the mitigation issue was subsumed in the negligence question submitted by the court. We agree. The charge requested the jury to find whether Allen's negligence proximately caused the foreclosure sale. "Negligence" was defined in the charge as "the failure to use ordinary care, that is failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances." AGF argued to the jury it should answer this question "yes," citing to the evidence that Allen did not get his mail forwarded, did not leave instructions with anyone in San Antonio to alert him if any issues arose, did nothing to follow up on the status of the tax suit, and due to his own negligence, did not get notice of the tax suit judgment or the order of sale. AGF argued that had Allen acted prudently, the foreclosure sale could have been avoided. The jury answered the question "no."

After reviewing the pleadings, evidence, and the charge as a whole, we conclude that the negligence issue required the jury to answer the same question that a mitigation instruction would have. Accordingly, any error in failing to submit a mitigation instruction in connection with a damages question did not cause the rendition of an improper judgment or prevent AGF from properly presenting his case on appeal and is not reversible. *See* TEX.R.APP. P. 44.1(a); *Shupe*, 192 S.W.3d at 579–80 ("Error in the omission of an issue is harmless 'when the findings of the jury in answer to other issues are sufficient to support the judgment.' ") (quoting *Boatland of Hous-*

*ton, Inc. v. Bailey,* 609 S.W.2d 743, 750 (Tex.1980)). We therefore overrule AGF's first issue.

### Breach of Contract Claims Fails as a Matter of Law

AGF contends in its second issue that Allen's breach of contract claim fails as a matter of law because the oral agreement was not sufficiently definite or supported by consideration, and was therefore unenforceable.

Whether an agreement is legally enforceable or binding is a question of law. *Oakrock Exploration Co. v. Killam,* 87 S.W.3d 685, 690 (Tex.App.-San Antonio 2002, pet. denied). To be enforceable, a contract must be sufficiently definite in its terms "so that a court can understand what the promisor undertook." *T.O. Stanley Boot Co. v. Bank of El Paso,* 847 S.W.2d 218, 221 (Tex.1992); *Killam,* 87 S.W.3d at 690. The terms of an oral agreement may be established by direct or circumstantial evidence. *Harris v. Balderas,* 27 S.W.3d 71, 77 (Tex.App.-San Antonio 2000, pet. denied). In determining whether an oral contract exists, we "look [ ] to the communications between the parties and to the acts and circumstances surrounding those communications." *Id.* (quoting *Copeland v. Alsobrook,* 3 S.W.3d 598, 605 (Tex.App.-San Antonio 1999, pet. denied)).

AGF argues its agreement to "pay all the amounts due and owing in the tax lawsuit out of the loan" was not sufficiently definite as to the contract's material terms. AGF contends the only evidence relating to the terms of the contract was Allen's and Esquivel's testimony that AGF would "take care of" the taxes and that there was no agreement as to the time and manner of performance.

Allen testified he went into AGF's offices with "the tax suit papers, saying I needed to pay the tax suits." Allen gave the "tax suit papers" to Esquivel and Esquivel told him that AGF did that all the time and that AGF "would pay the tax suit." The "tax suit papers" were part of AGF's loan file and were admitted as exhibits at trial. The papers showed the amount Allen owed in back taxes, to whom they were owed, and contained the name and address of the taxing authorities' attorney. Esquivel admitted that from the documents AGF knew the amount of taxes it needed to pay and to whom. Those same documents showed the taxes were past due and Esquivel testified AGF was required to pay the entire balance due promptly because penalties and interest would continue to accrue each month. Esquivel testified that the services AGF agreed to provide as part of the loan transaction included determining the amount of taxes due and paying the taxes, accrued interest, fees and costs immediately after the loan closed.

AGF argues this case is analogous to *Univ. Nat'l Bank v. Ernst & Whinney.* We disagree. In that case, the only evidence of an agreement was the plaintiff's testimony that it asked the defendant accounting firm to perform functions that bank examiners had performed in the past and that a representative of the accounting firm responded, "We will take care of you on that. We will look after you. We will report to you on whatever is necessary." 773 S.W.2d 707, 710 (Tex.App.-San Antonio 1989, no writ). Noting that the evidence failed to demonstrate time of performance, duration of performance, or frequency of inspection obligation, this court held the trial court correctly granted the accounting firm's motion for instructed verdict on the breach of contract claim because the plaintiff had not proven an enforceable contract. *Id.* In contrast, in this case there was evidence from which the jury could reasonably find that AGF agreed: to determine to whom taxes were owed and

the amount owed; to pay from the loan proceeds all amounts needed to resolve the tax suit; and to pay the amounts due immediately after the loan closed. We hold the evidence of an oral agreement was sufficiently definite in its terms for us to determine "what the promisor undertook." *See T.O. Stanley Boot,* 847 S.W.2d at 221.

AGF also argues the promise is not enforceable because it was not supported by consideration. *See Copeland,* 3 S.W.3d at 606 (agreement that lacks consideration is unenforceable). "Consideration is a present exchange bargained for in return for a promise." *Id.* (quoting *Roark v. Stallworth Oil & Gas, Inc.,* 813 S.W.2d 492, 496 (Tex.1991)). "A promise for a promise is sufficient consideration in Texas." *Copeland,* 3 S.W.3d at 606. And "one consideration will support multiple promises by the other contracting party." *Fortner v. Fannin Bank in Windom,* 634 S.W.2d 74, 77 (Tex.App.-Austin 1982, no writ). What constitutes consideration is a question of law for the court. *Brownwood Ross Co. v. Maverick County,* 936 S.W.2d 42, 45 (Tex.App.-San Antonio 1996, writ denied).

AGF contends its alleged agreement to pay all amounts owing in the tax lawsuit was a separate transaction from the loan agreement and was not supported by a return promise or other consideration. To the contrary, the evidence established the promise to take care of the taxes was an integral part of the loan transaction, not a separate agreement. Moreover, AGF and Allen exchanged mutual promises. AGF promised to provide Allen with a loan and to pay all amounts due in the tax suit from the loan proceeds, remitting the remainder to Allen. In exchange, Allen promised to make loan payments and pay off the loan with interest. Allen's promise was sufficient consideration to support both the lending of money

and the promise to pay the amounts due in the tax suit. *See Fortner,* 634 S.W.2d at 76–77 (borrower's promise to repay a loan was sufficient consideration for the lender's promise to fund the loan and file the title to the car purchased by the borrower). We therefore overrule AGF's second issue.

### Defense of Excused Performance

AGF next challenges the jury's failure to find that its breach of the agreement was excused. Our law recognizes as an affirmative defense the principle that a party is excused from performing a contract if the other party committed a prior material breach of the contract. *Compass Bank v. MFP Financial Services, Inc.,* 152 S.W.3d 844, 852 (Tex.App.-Dallas 2005, pet. denied). Because AGF challenges an adverse finding on an issue on which it had the burden of proof, we first examine the record for evidence that supports the finding, while ignoring all evidence to the contrary. *See Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 241 (Tex.2001). If there is no evidence to support the finding, we examine the entire record to determine if the contrary finding was established as a matter of law. *Id.* We will sustain the point only if the contrary proposition is conclusively established. *Id.*

Question no. 3 asked the jury whether AGF's failure to comply with the agreement was excused. The jury was instructed:

> Failure to comply by American General Finance, Inc. is excused by Kyle Allen's failure to comply with a material term of the home equity loan.

The jury answered "no." AGF argues that when weighed against the charge, the evidence does not support the jury's finding and conclusively establishes Allen materially breached the agreement by failing to make any payments on the loan. Allen

contends the trial court incorrectly instructed the jury on the law of excuse and that he objected to the charge on that ground and tendered a properly worded instruction. Allen argues we should therefore measure the legal sufficiency of the jury's answer against a hypothetically correct charge.

■■■■■ "When one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance." *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex.2004). Thus, AGF was excused from performing the agreement only if Allen *first* materially breached the contract. *See id.* at 200; *Compass Bank*, 152 S.W.3d at 852. The instruction allowed the jury to find AGF's performance was excused if Allen breached the agreement at any time. Allen's objection to the charge specifically pointed out the defect in the instruction and he submitted several alternative instructions that correctly stated the law. His objection was overruled and the requests denied. Under these circumstances, we measure the sufficiency of the evidence against a properly worded charge. *See St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 530 (Tex.2002) (holding that when trial court submits erroneous instruction over proper objection, appellate court measures sufficiency of evidence against charge trial court should have submitted).

■■■■■ Reviewing the evidence against a proper charge, the evidence supports a finding that AGF's breach occurred before any breach by Allen and therefore AGF's breach is not excused. AGF's employees testified the amounts due in the tax suit should have been paid within a few days after closing. Allen's first loan payment was not due until more than a month after closing. We overrule AGF's third issue.[2]

### *Usury Claim*

In its fifth issue, AGF argues it is not liable for usury as a matter of law because there is no evidence it "charged" a usurious rate of interest.

AGF does not dispute that an attorney acting on its behalf sent Allen a letter in August 1998 demanding payment that included interest greater than that allowed by law. The letter was addressed to Allen at the Nashville Drive address and was sent by "regular mail" and by certified mail return receipt requested. The certified mail was returned to the attorney unclaimed; however, the copy of the letter sent "regular mail" was not returned. Allen testified he did not receive the letter.

Under Texas law, a creditor who charges interest greater than that allowed by law is liable to the person charged. *See* TEX. FIN.CODE ANN. § 305.001(a) (Vernon 2006). Relying on *George A. Fuller Co. v. Carpet Serv., Inc.*, 823 S.W.2d 603 (Tex. 1992) and *Hoxie Implement Co., v. Baker*, 65 S.W.3d 140 (Tex.App.-Amarillo 2001, pet. denied), AGF argues that because Allen did not receive the demand letter, the usurious rate was never communicated to him, and therefore there was no "charge" within the meaning of the usury statute.

In *Fuller*, the supreme court held that a claim for prejudgment interest in a pleading is not a "charge" within the meaning of the usury statute. 823 S.W.2d at 606. In reaching this decision, the court reasoned that to constitute a "charge," a demand for usury must be "communicated outside the organization making the charge.... It must be communicated to the debtor. The

**2.** Because Allen elected to recover on his breach of contract claim and we have overruled AGF's issues addressed to that claim, we do not decide its fourth issue in which it contends the trial court erred in submitting a negligence question to the jury.

communication need not be direct, as long as the charge is ultimately demanded from the debtor." *Id.* at 605. The court concluded that a claim in a pleading is not a demand on the debtor because "pleadings serve to give a party notice of the issues at trial[,] ... are addressed to the court, and only demand that the court grant judgment. There is no demand on the opposing party." *Id.* at 605.

AGF interprets the court's statement in *Fuller* that the demand "must be communicated to the debtor" to mean that the debtor must receive or read the demand. Read in context, we do not believe this is what the court intended. The court made the statement in the course of overruling *Hagar v. Williams,* 593 S.W.2d 783 (Tex. Civ.App.-Amarillo 1979, no writ), which held that a creditor's act of unilaterally placing an amount due as interest on an account without ever demanding payment of the amount from the debtor or otherwise communicating the charge outside the organization is a "charge." *See Fuller,* 823 S.W.2d at 605. We construe the court's statement in *Fuller* that the amount "must be communicated to the debtor" to mean simply that the allegedly usurious charge must be "communicated outside the organization making the charge" and "demanded from the debtor," not that the debtor must have received and read the demand. *See id.*

Likewise, *Hoxie* does not support AGF's argument. In *Hoxie,* one of the usury claims was based on testimony that Hoxie's computer system automatically levied an interest charge of eighteen percent on tardy accounts receivable. 65 S.W.3d at 148–49. However, there was no evidence Hoxie ever sent the debtor an invoice that included such charges and the debtor testified he did not receive one. *Id.* at 149. Relying on *Fuller,* the court held there was no charge because there was no "ex-press and positive demand for usurious interest." *Id.*

*Fuller* and *Hoxie* require that to be a "charge" within the meaning of the usury statute the charge must be communicated outside the organization making the charge and expressly and positively demanded from the debtor. *Fuller,* 823 S.W.2d at 605; *Hoxie,* 65 S.W.3d at 149. Neither case requires that the usurious demand must be received and read. In light of the purpose of the usury statute—to "correct abusive practices in consumer and commercial credit transactions"—we hold that a demand for usurious interest in a letter addressed and sent to the debtor is a "charge" within the meaning of the statute without requiring proof that the intended recipient actually received and read the letter. *See Fuller,* 823 S.W.2d at 605 (purpose of usury statutes). Accordingly, we overrule AGF's fifth issue.

### *Exclusion of Evidence*

In its sixth and final issue, AGF argues the trial court erred in excluding from evidence an allegedly false affidavit filed in the redemption proceeding in which Allen swore he had "never conveyed, nor transferred any right[,] title[,] or interest in the ... [Nashville Drive] property" and was "entitled to all excess proceeds from the sale of the ... [Nashville Drive] property." We review the trial court's ruling on the admissibility of evidence for abuse of discretion and may reverse only if error in excluding the evidence was harmful. *Texas Dep't of Transp. v. Able,* 35 S.W.3d 608, 617 (Tex. 2000). To show harm, the complaining party must generally "show that the judgment turns on the particular evidence excluded." *Id.*

AGF first contends the affidavit is relevant to the issue of mitigation because it evidences Allen's active concealment of the

foreclosure from AGF, which in turn prevented AGF from redeeming the property and allowed Allen to collect all the excess proceeds from the sale. However, the mitigation issue related to Allen's conduct before the foreclosure sale. The affidavit was not executed until after the foreclosure sale occurred and Allen learned of it. Moreover, AGF received a credit against the judgment for the entire amount of the redemption proceeds. AGF also argues the affidavit is relevant to the issue of whether Allen's breach of his obligations under the home equity loan excused AGF's breach. As discussed above, the only breach by Allen that would be relevant to AGF's excuse defense would be one that occurred *before* AGF failed to pay the amounts due in the tax suit. We conclude the affidavit was not directly relevant to any of the issues submitted to the jury.

Finally, AGF argues the affidavit should have been admitted because it is relevant to Allen's credibility. However, Allen's credibility with respect to the issues submitted to the jury was not genuinely contested. Mark Esquivel did not materially dispute Allen's testimony about the transaction. And Allen did not dispute the facts AGF relied on to argue Allen was negligent. We hold the trial court did not abuse its discretion in excluding the affidavit.

### ALLEN'S APPEAL

Allen raises three issues challenging the remittitur of attorney's fees and the trial court's failure to reduce the credit against the judgment for the redemption proceeds by the amount of attorney's fees Allen incurred in obtaining the redemption. Allen also raises a conditional issue to be addressed if we do not reinstate the remitted amount of attorney's fees in which he complains of the trial court's summary dismissal of his DTPA claim.

### *Attorney's Fee Remittitur*

In his first two issues, Allen argues the trial court erred in suggesting a remittitur of attorney's fees and asks that we reinstate the jury's award of $150,000.00 in attorney's fees for the preparation and trial of the case.

Allen's attorney, Steve Sinkin, testified three lawyers spent 799 hours on the case during the almost six years since AGF filed its original petition, and Allen introduced an exhibit detailing the time spent on the case. The attorney testified that a reasonable fee for the legal services performed for Allen and reflected in the exhibit is $150,000. On cross-examination Sinkin testified he did not break down the time spent pursuing the various legal theories Allen pled in the case. He conceded there were several claims Allen pursued that were not tried and that the time reflected on the fee exhibit included time spent on those claims as well as on the negligence claim. However, Sinkin also testified it was not possible for him to segregate the time spent on the negligence claim from that spent on the breach of contract claim because the issues were "intertwined" and involved the same facts and testimony. He concluded that "the same amount of time would have been spent in this case" "if the case had been from day one only breach of contract" and that all of the time reflected in the fee exhibit "relates to the breach of contract claim."

AGF objected to the charge because it failed to limit the fees to the breach of contract and usury claims, for which fees are recoverable. The trial court overruled the objection and the jury found the reasonable and necessary attorney's fee for the preparation and trial of the case to be $150,000.00. After the verdict, AGF filed a motion for judgment notwithstanding the verdict or alternatively for a new trial, and a request for remittitur on the grounds

that Allen failed to segregate the attorney's fees attributable to the claims for which fees are recoverable and that the fees awarded were excessive. Allen remitted $100,000 in attorney's fees at the trial court's suggestion, and the judgment awarded Allen only $50,000 in fees for trial. Allen perfected an appeal and challenges suggestion of remittitur pursuant to Rule 46.2 of the Texas Rules of Appellate Procedure.

We must first address AGF''s argument that Allen waived any complaint about the remittitur by filing an unqualified motion for entry of a judgment that excluded the remitted amount. Allen initially moved for judgment on the verdict. However, after the trial court orally suggested a remittitur, Allen filed an amended motion for entry of judgment, attaching a proposed judgment that recited:

> On the motion of [AGF] the Court suggested remittitur of 2/3 of the $150,000.00 found by the jury for Plaintiff's attorney fees to reflect a reasonable amount attributable to the breech [sic] of contract claim and Plaintiff has filed a remititur [sic] of $100,000.00 in response to the Court's suggestion.

Allen's amended motion for judgment did not expressly note his disagreement with the remittitur, and AGF argues Allen may not complain that the trial court rendered the judgment he requested.

 We do not agree that Allen was required to expressly note his objection to the remittitur in order to appeal the issue. A party who consents to a remittitur necessarily asks the court to render judgment for an amount less than the jury awarded. By consenting to the suggestion of remittitur, the party waives the right to complain about the trial court's action on appeal, and no such right is preserved by including language such as "under protest" in a motion for judgment. *City Nat'l Bank in Wichita Falls v. Jacksboro Nat'l*

*Bank,* 602 S.W.2d 511, 512 (Tex.1980). However, the Texas Rules of Appellate Procedure provide that a party who remits at the trial court's suggestion may complain about the remittitur on appeal if the party benefiting from the remittitur appeals and the remitting party independently perfects an appeal. *See* TEX.R.APP. P. 46.2. Because those facts are present in this appeal, we hold Allen did not waive his right to appeal the remittitur.

 We next decide whether Allen was required to segregate the attorney's fees incurred in prosecuting the claims for which fees are recoverable. A party may recover attorney's fees only if authorized by statute or contract. *Tony Gullo Motors I, L.P. v. Chapa,* 212 S.W.3d 299, 310 (Tex.2006). As the prevailing party in his usury and breach of contract claims, Allen was entitled to recover reasonable attorney's fees for those claims. TEX. FIN.CODE ANN. § 305.005 (Vernon 2006); TEX. CIV. PRAC. & REM.CODE § 38.001(8) (Vernon 1997). However, fees are not recoverable for Allen's negligence claim or for the claims he did not prosecute successfully. Nevertheless, Allen argues he was not required to segregate his fees because all of the legal work performed in the case was required to successfully prosecute his breach of contract claim.

The supreme court has recognized that many legal services performed in a case involving multiple legal theories would have to be performed even if only a claim for which fees are recoverable were brought. *Tony Gullo Motors,* 212 S.W.3d at 313. "To the extent such services would have been incurred on a recoverable claim alone, they are not disallowed simply because they do double service." *Id.* However, the mere fact that claims are based on common facts or are "intertwined" does not make all fees incurred recoverable. *Id.* For example, when the plaintiff's at-

torney is drafting the part of the pleadings or jury charge relating to a tort claim, "there is no question those fees [are] not recoverable." *Id.* The court concluded that "if any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees." *Id.* The court clarified that counsel is not required to keep separate records documenting, for example, the amount of time spent pleading a tort claim as opposed to a contract claim; rather, in such cases, the claimant's attorney could state an opinion as to the percentage of the total time that would have been spent had the claim for which fees are not recoverable not been part of the case. *Id.* at 314.

■ Allen argues all of the time reflected on the fee exhibit did "double service" and would have been spent if only a breach of contract claim had been filed. However, the record establishes otherwise. Allen's original counterclaim against AGF alleged only negligence and gross negligence. Allen's eight succeeding amended petitions added claims for breach of contract, usury, violations of the Texas Deceptive Trade Practices Act, violations of the provisions of the Texas Constitution relating to the extension of credit for home equity loans, and unlawful debt collection practices, each of which was pled separately and in detail. Allen's fee evidence included all the time spent researching, pleading, and conducting discovery on claims that were not tried and on claims for which fees are not recoverable. The fee exhibit also included time spent in summary judgment proceedings related solely to the gross negligence and DTPA claims, which were not tried. Clearly, there were discrete legal services performed by Allen's attorneys that related solely to claims other than the breach of contract and usury claims. Accordingly, Allen was required to provide some evidence that would allow the trier of fact to

award fees only for the breach of contract and usury claims. Because Allen failed to segregate attorney's fees, the evidence does not support the jury's award of $150.000.00. *See A.G. Edwards & Sons Inc. v. Beyer*, 235 S.W.3d 704, 709–10 (Tex. 2007); *Tony Gullo Motors*, 212 S.W.3d at 314. We therefore decline to reinstate the remitted amount and overrule Allen's first two issues.

### *Redemption Credit*

■ In his third issue, Allen asks the court to modify the judgment "to reduce the foreclosure excess redemption credit by the contingent one-third attorney fee Allen incurred in obtaining the redemption." After the jury found the market value of the property to be $54,000, the trial court credited that amount by the $29,993.66 excess proceeds that Allen obtained in the redemption suit. Allen argues the credit should be reduced by the one-third contingent attorney's fee he incurred to obtain the redemption. In effect, Allen contends the reasonable and necessary fees he incurred to redeem the property were part of the damages he sustained as a result of AGF's breach of contract. Allen did not request a jury finding or a finding of fact from the trial court on these issues. Moreover, we have no record of any proceedings that reflect the basis for the trial court's decision to award a credit or the amount of the credit. Accordingly, Allen has failed to present a record showing any error and we overrule his issue on the amount of the redemption credit.

### *Summary Judgment on DTPA Claim*

Because we have overruled Allen's issues regarding the remittitur of attorney's fees, we address his issue—that the trial court erred in granting summary judgment in favor of AGF on Allen's claim

under the Texas Deceptive Trade Practices Act.

### Standard of Review

AGF filed a traditional motion for summary judgment, contending the DTPA claim fails as a matter of law because Allen was not a consumer, and filed both a traditional and no-evidence motion for summary judgment on the ground that AGF did not commit the deceptive acts alleged in the petition. The trial court granted the motion and dismissed Allen's DTPA claims without specifying the ground relied upon for its ruling. Accordingly, we will affirm if any of the grounds presented to the trial court and preserved for review are meritorious. *Browning v. Prostok,* 165 S.W.3d 336, 344 (Tex.2005).

We review both traditional and no evidence summary judgments *de novo. Joe v. Two Thirty Nine Joint Venture,* 145 S.W.3d 150, 156 (Tex.2004). We consider the evidence in the light most favorable to the non-movant and indulge all reasonable inferences and resolve any doubts in the non-movant's favor. *Id.* at 157. We will affirm a traditional summary judgment only if the movant established there are no genuine issues of material fact and it is entitled to judgment as a matter of law on a ground expressly set forth in the motion. *Id.* We will affirm a no-evidence summary judgment only if the non-movant failed to produce more than a scintilla of probative evidence raising a genuine issue of material fact on a challenged element of the cause of action. *Ford Motor Co. v. Ridgway,* 135 S.W.3d 598, 600 (Tex.2004).

### Allen's Status as a "Consumer"

To pursue a DTPA cause of action, a plaintiff must be a consumer. *Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 478 (Tex.1995); Tex. Bus. & Com.Code Ann. § 17.50(a) (Vernon Supp. 2006). To qualify as a consumer under the Act, a plaintiff must "seek or acquire goods or services by purchase or lease" and those goods or services must form the basis of the complaint. *Bohls v. Oakes,* 75 S.W.3d 473, 479 (Tex.App.-San Antonio 2002, pet. denied); *see* Tex. Bus. & Com. Code Ann. § 17.45(4) (Vernon 2002).

A person who seeks "only the extension of credit ... and nothing more" is not a consumer under the DTPA because the lending of money is not a good or service. *La Sara Grain Co. v. First Nat'l Bank of Mercedes,* 673 S.W.2d 558, 566 (Tex.1984); *Riverside Nat'l Bank v. Lewis,* 603 S.W.2d 169, 173, 175–76 (Tex. 1980). A borrower whose sole objective is a loan does not become a consumer merely because the lender provides services incidental to the loan that are not independent objectives of the transaction. *See Riverside,* 603 S.W.2d at 175; *Maginn v. Norwest Mortgage, Inc.,* 919 S.W.2d 164, 166 (Tex.App.-Austin 1996, no writ). However, when a borrower's objective is to obtain goods or services and the loan provides the means for obtaining the goods or services, the borrower qualifies as a consumer. *La Sara Grain,* 673 S.W.2d at 567; *Knight v. Int'l Harvester Credit Corp.,* 627 S.W.2d 382, 389 (Tex.1982). Likewise, when the borrower seeks services from the lender as an independent objective and not merely ancillary to a loan, the borrower is a consumer with respect to the provision of such services. *See White v. Mellon Mortgage Co.,* 995 S.W.2d 795, 801 (Tex.App.-Tyler, 1999 no pet.) ("An activity related to a loan transaction is a 'service' for DTPA purposes only if the activity at issue is, from the plaintiff's point of view, an objective of the transaction, not merely incidental to it."); *Herndon v. First Nat'l Bank of Tulia,* 802 S.W.2d 396, 398–99 (Tex.App.-Amarillo 1991, writ denied) (petition was sufficient to state DTPA claim where it alleged plaintiff sought financial counseling services as well as loan and the services formed the basis of DTPA claim); *Juarez*

*v. Bank of Austin,* 659 S.W.2d 139, 142 (Tex.App.-Austin 1983, writ ref'd n.r.e.) (plaintiff who specifically requested and was provided credit insurance in connection with his loan was consumer in suit against bank for misrepresentations about credit insurance); *Fortner,* 634 S.W.2d at 75–76 (borrower who asked lender to register title papers to car purchased with loan proceeds was consumer and could pursue DTPA claim arising out of lender's failure to process title papers). The determining factor is whether the borrower's "objective" is solely to obtain a loan or to obtain a good or service. *See La Sara Grain,* 673 S.W.2d at 567.

■ AGF contended in its motion for summary judgment that Allen sought only the extension of credit and therefore was not a consumer. However, Allen's summary judgment evidence established that his objective in going to AGF was to get the tax suit taken care of and that Allen told Mark Esquivel when they first met, "I need to take care of this tax suit and . . . can you help me out." Allen presented summary judgment evidence that AGF agreed "to take care of it" and undertook to loan Allen money and provide escrow services to accomplish Allen's objective. Allen presented more than a scintilla of evidence that his primary objective was to obtain the services that are the basis of his claim. Accordingly, AGF failed to establish as a matter of law that Allen was not a consumer, and the trial court erred in dismissing Allen's DTPA cause of action on that ground.

### Evidence of Deceptive Acts

■ AGF also moved for summary judgment on the ground that its summary judgment evidence established or, alternatively, there was no evidence that AGF committed the allegedly deceptive acts enumerated in Allen's petition. Allen failed to respond to AGF's contention that there was no evidence AGF represented that a title company would close the loan. Accordingly, the trial court did not err in granting summary judgment with respect to the claim AGF committed that deceptive act. However, after reviewing the motion and the responsive pleadings and evidence, we conclude Allen raised more than a scintilla of probative evidence raising a genuine issue of material fact regarding the rest of the allegedly deceptive acts that were the subject of AGF's motion. The trial court therefore erred in dismissing the remainder of Allen's DTPA cause of action.

CONCLUSION

We overrule AGF's issues challenging the judgment in Allen's favor for breach of contract and usury. We also overrule Allen's issues seeking to modify the judgment. Ordinarily we would then affirm the trial court's judgment. However, we have sustained in part Allen's point seeking reversal of the trial court's summary judgment on his DTPA claim, and hold that the claim may go forward. The injury Allen alleges resulted from AGF's deceptive acts is the loss of his home, the same injury he suffered as a result of the breach of contract, and Allen is entitled to only one recovery for that injury. *See Tony Gullo Motors,* 212 S.W.3d at 303–04. If Allen ultimately prevails on his DTPA claim, he is entitled to judgment on the most favorable theory supported by the pleadings, evidence, and verdict. *Id.* at 304. But he is not required to elect his remedy until he knows what his choices are. *See id.* at 314. Accordingly, we reverse the trial court's judgment and remand the cause to the trial court to allow Allen to pursue his DTPA cause of action and, if he is successful, to elect his remedy.